SUGGS et al. v. SINGLEY et al. (No. 608.)

(Court of Civil Appeals of Texas. Amarillo. May 2, 1914. Rehearing Denied May 30, 1914.)

1. HUSBAND AND WIFE (§ 273*)—SURVIVOR OF COMMUNITY — PAYMENT OF COMMUNITY DEBTS.

The survivor of a community may pay community debts out of the community estate, and, having done so to the full value of the community personal property, one of the heirs could not recover anything from such survivor on that account.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

2. HUSBAND AND WIFE (§ 274*)—COMMUNITY ESTATE—DIVISION—FAMILY SETTLEMENTS.

Where a daughter on the death of her mother received certain land from her father as the survivor of the community, and acquiesced in a division for five years, occupying the portion of the real property received without objection, she would be held thereby to have agreed to the receipt of such property in full satisfaction of her claim against her mother's estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. § 274.*]

3. HUSBAND AND WIFE (§ 266*)—INTEREST IN COMMUNITY ESTATE—SURRENDER.

A wife may not renounce to her husband her interest in the community estate by contract, practically without consideration, even through the intervention of a trustee.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928; Dec. Dig. § 266.*]

4. PARTITION (§ 9*)—DIVISION AMONG CHILDREN—ACQUIESCENCE—EFFECT.

Where parents made a partition of land to their children in anticipation of the death of the mother, and each child took possession of their respective interests and improved the property, and after the death of the mother continued to acquiesce therein for several years, it would be enforced in equity as a partition between the heirs.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 26–32; Dec. Dig. § 9.*]

Appeal from District Court, Collingsworth County; J. A. Nabers, Judge.

Suit by J. W. Singley and others against Ethel Suggs and others. Judgment for complainants, and defendants appeal. Affirmed.

J. L. Lackey, of Wellington, and Presler & Thorne, of Memphis, for appellants. R. H. Templeton and C. C. Small, both of Wellington, for appellees.

HENDRICKS, J. This suit was instituted by the appellees, J. W. Singley, E. A. Singley, and H. E. Singley, against the appellants, Mrs. Ethel Suggs (née Singley) and her husband, W. W. Suggs, for the purpose of confirming an alleged parol partition of certain lands in Collingsworth county, and an alleged settlement of the community estate owned by the appellee J. W. Singley and his deceased wife; the appellant Mrs. Ethel Suggs and her brothers, E. A. and H. E. Singley, being the surviving children of said J. W. Singley and wife. The cause was tried by the court, without the intervention of a jury, and judgment was rendered against Mrs. Suggs and her husband, in favor of the three Singleys, appellees herein, confirming the alleged settlement of said community estate, and divesting the title of the interest of each in the respective tracts of land.

We overrule the preliminary contention of appellees for a dismissal of this cause, on the ground that the record is not adequate for the perfection of the appeal, and that jurisdiction was not conferred. There is no specific attack upon the certificate of the clerk, and we are inclined to think that the presumptions in favor of the performance of duty, in the preparation of the records in the lower court, is sufficient on this subject.

[1, 2] The trial court found the following conclusions of fact and law:

"Plaintiff J. W. Singley moved to Collingsworth county about thirteen years ago; his intention being to secure enough land to divide up with his children, of whom he had three—all grown up—two boys, Henry and E. A. Singley, and a daughter, Mrs. Ethel Suggs. He bought three sections of land, being the land in

controversy, in Collingsworth county. It was talked over and agreed afterwards among the family that the land should be divided so as to give each child a half section at the death of either parent as his or her part of the community estate of such as should die first. Mrs. Suggs, however, was not present when this arrangement was made, nor was her husband, but was afterwards advised of it. In anticipation of the death of one of the parties, the two boys were each given a half section; that is to say, no deed was made to either, but they each went into possession of what they each considered was his part of the land as agreed between the parents. The daughter, who lived in another part of the state, was urged to come also and live near the old couple and take a half section of land. Her mother paid her a visit in Bell county, where she was living at the time, and remained for several months. This was a short time before she died, and she was then in feeble health. While on this visit the mother insisted on Mrs. Suggs and her husband selling out their business in Bell county, Suggs being engaged in the saloon business there, and taking her half section in Collingsworth county and moving to same. Mrs. Suggs was anxious to do so, and her husband was finally persuaded, after the death of the mother in May, 1908, to sell out said business and move to Collingsworth county. The mother had stated that she intended for her daughter to have the E. ½ of section 36; but when she came she selected the W. ½ of section 37, block 15, which adjoined section 36 on the east, and was not quite as good land as the E. ½ of section 36, but had a well of good water on it and some fencing, while the E. ½ of section 36 was unimproved. The E. ½ section 36 was school land, and was incumbered to the extent of 97½ cents per acre, due the state, while the W. ½ section 37 was unincumbered. Her husband built a house and other improvements on the place, expending about $4,000, went into possession, and has since lived there five years and paid taxes on said land and exercised other acts of ownership. The arrangement with all parties seemed to have been entirely satisfactory, and acquiesced in by all, for about five years, until some months ago, when ill feeling grew up between the parties, and this suit was instituted. I find there is no material difference in the value of the land of the respective parties, except that the land selected by the two Singley boys was worth at the time of the death of the mother about $1 an acre more than that of the daughter, but, as to one half section, it was incumbered by the 97½ cents per acre due the state. As to the land kept by the elder Singley, it was about the same value on an average as that selected by the daughter. There was some personal community property at the date of the death of the mother of the value of $800 and community debts to the amount of $900, which were afterwards discharged by the elder Singley out of the community estate. From all the facts and circumstances in the case I find that said Mrs. Suggs and her husband took the said W. ½ section 37 as her part of her mother's estate, and same was given to her for that purpose."

### Conclusions of Law.

"(1) The survivor in community was entitled to pay the community debts out of the community estate, and, having done so to the full amount of value of the personal property, the said Mrs. Suggs is not entitled to recover anything from him on that account.

"(2) As to the land received by her, having acquiesced in the arrangement made by the other parties hereto for five years or thereabouts, agreed to by her acts in the premises and her long acquiescence in the arrangement, she thereby agreed to and did receive said property in full satisfaction of her claim on her mother's estate, and became thereby a party to the original agreement between her kinsmen to partition the property, and is entitled to recover her said W. ½ of section 37, which she herself selected and has since made her home, and nothing more.

"(3) On the death of the mother the parties hereto became cotenants of the premises; by their own acts theretofore and thereafter they did partition same. Each had reached majority, and each is presumed to have intended to do what they actually did. It therefore follows that it is competent for the court to confirm said partition and thereby vest the legal record title in each of said parties to the respective portions of the said premises, respectively, heretofore selected and taken possession of by the respective parties hereto."

If we interpret the position of appellants correctly in this cause, it is that the tentative agreement alleged and proved by the appellees, with reference to a division of the community property of the parents with the children, before the death of the mother, is void, and that the testimony is not sufficient to establish a subsequent settlement and partition of the community estate of the deceased parent, after the survivors became tenants in common of such property. J. W. Singley, the father of Mrs. Suggs, the appellee, and the other appellees testified:

"Along about 1908 or prior thereto a certain partition was had of our property. * * * There was a division of the estate of my wife and my own."

Again he said:

"Mr. and Mrs. Suggs were at my house pretty regularly about four years prior to the death of my wife, and about that time I told Mrs. Suggs this half section of land had been allotted to her. * * * She took that half section of land, but not at that time; later she entered upon it (after the death of her mother), and they have improved it with a good well, good house, and good barn."

He further testified that about six weeks prior to the death of his wife, while Mrs. Suggs, the daughter, was on a visit to their home from a distant part of the state, that something was again said in regard to a division of the property, and that he informed her that the particular half section of land was allotted to her as her part of the property.

The sons of J. W. Singley, and the brothers of Mrs. Suggs, in substance testified similarly to the father; one of them stating "that was the general understanding, and we talked of it a number of times." The other Singley testified that, when his sister was visiting their home in Collingsworth county, the mother was in very bad health, and she wanted the daughter to return to that county, and informed her "that she had a half section of land there, and it was all understood right there. Mrs. Suggs did not object to it at that time, but said she would come here if she could."

Mrs. Suggs testified:

"I took the half section of land because my father wanted me to come and live near him. My father does not exercise any claim on the land now. I made claim to it. I have been paying taxes on it."

Again she said, "My husband has never objected to living on that land;" and further stated that she and her husband had each demanded deeds from the father for the land that she and her husband had settled upon and improved.

The husband testified:

"I did decide to wind it up; as to going to him for a deed to this property, I supposed it would all have to be deeded. I understood that they would have to deed me mine, and I would deed them theirs; exchange deeds between us. I asked for a deed to this land I have been living on as a home, and I thought that I would have to have that, and they would have to have their deeds."

He further said:

"I have exercised all the privileges of ownership of the land. I was acting for myself and wife at the time I went down there and took possession under the direction of Mr. Singley [meaning his wife's father]."

The further position of appellants is that Mrs. Suggs, the daughter, merely took possession of this land at the direction of the father, J. W. Singley, as a gift inter vivos, subsequent to the death of the mother, and the testimony could not be construed as an agreement by her, joined by the husband, of a partition and settlement of her interest in the estate. We think the testimony amply justifies the court's conclusion that after the death of the mother Mrs. Suggs took possession of the half section, with her husband co-operating therein, and improved the land and lived upon the same for nearly five years, with the understanding that it was a partition and settlement of the community interest of the mother in said estate. The first objection, after several years' occupancy, was just a few weeks previous to the institution of this suit.

The case of Proetzel v. Schroeder, 83 Tex. 684, 19 S. W. 292, decided by the Commission of Appeals, according to our view, has no application to this cause. One of the elements of the agreement of the wife and mother in that cause was an entire renunciation to her husband of "all the community property to which she may be entitled under the laws of this state," and she gave to her husband "full power and authority to sell and convey, or in any manner dispose of, all the community, real, personal, or mixed which he [the husband] now possesses or may hereafter acquire." The Supreme Court said that the proof in that cause showed that the agreement was practically a surrender by the wife to the husband of five-sixths of her estate or interest in the community, without any consideration whatever, and could not appeal to the court for the purpose of enforcement on any equitable grounds, holding that said contract was void. Judge Hobby, in rendering the opinion in that cause, further discussed the question of the conveyance by an heir of a contingent and expectant interest, rather viewing such a release as void, but not specifically deciding the proposition.

The Supreme Court, however, has held that an expectancy of an heir to his ancestor's estate, or the anticipated rights of a person as next of kin, may be the subject of a contract in equity, which will be equivalent to an assignment when the estate vests. Hale v. Hollon, 90 Tex. 427, 39 S. W. 287, 36 L. R. A. 75, 59 Am. St. Rep. 819.

It is again held by the Court of Civil Appeals that a son's expectant interest in the estate of his mother, who is a lunatic, may be the subject of a valid conveyance. Searcy v. Gwlatney Bros., 36 Tex. Civ. App. 158, 81 S. W. 576.

[3, 4] Of course the wife could not renounce to the husband her interest in the community estate, where it is attempted to be grounded upon contract, if practically without consideration, even through the intervention of a trustee. Kellett v. Trice. 95 Tex. 160, 66 S. W. 51. We are not prepared to say, however, that if the parents were to make a partition with their children of the expectant interests of the children in anticipation of the death of either parent, and each child and the mother and father, in pursuance of such agreement, were to take possession of their respective interests and improve the property, and after the death of one of the parents, and after several years' acquiescence, that the agreement would not be enforceable, in a court of equity, if fairly and equitably made. If the heir could sell his or her expectant interest, why could it not be partitioned?

It is unnecessary to cite authorities to sustain a parol partition of land where acted upon, and fairly made, even by married women. When Mrs. Suggs and her husband took possession of the property shortly after the death of the mother, they knew the other Singleys were claiming the interest in the respective land occupied by each, which she might have been otherwise entitled to as an heir—at least all of their acts indicate it—and were bound to have known of the improvements made upon the land respectively claimed by those who had enhanced the value of the same occupied by them. Aside from the question of an agreement for division, made before the death of the mother, which the court finds she had knowledge of, the acts, admissions, and spoken words, with the long acquiescence, resolving the construction of the testimony as the trial court resolved it, bespeak an agreement of partition and settlement of her mother's estate. The demurrers by appellants do not show to have been presented to the court. The community personal property was clearly absorbed by the debts, and we think the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.