## ARMSTRONG v. TURBEVILLE et ux. (No. 1026.)

(Court of Civil Appeals of Texas. El Paso. Nov. 28, 1919. Rehearing Denied Dec. 18, 1919.)

1. HUSBAND AND WIFE ⬤➡119(3) — CONVEYANCE FROM HUSBAND TO WIFE AS HER SEPARATE ESTATE.

Where deed of husband to wife upon its face discloses that the property is conveyed to her as her separate estate, this makes the property her separate estate.

2. HUSBAND AND WIFE ⬤➡262(1)—PRESUMPTION THAT MONEY BORROWED IS COMMUNITY PROPERTY.

Money borrowed by the husband or the wife, in the absence of agreement to the contrary, is presumed to be community property, even though the separate property of one of the spouses is mortgaged to secure the loan.

3. HUSBAND AND WIFE ⬤➡249 — BORROWED MONEY AS WIFE'S SEPARATE PROPERTY.

If the wife borrow money for the benefit of her separate property, intending to repay it out of her separate estate, and both she and her husband intend that the borrowed fund shall not be community property, but shall belong separately to the wife, such will be its status, though the husband has signed the note and pledged his separate property to secure the loan.

4. HUSBAND AND WIFE ⬤➡249 — BORROWED MONEY AS WIFE'S SEPARATE PROPERTY.

That there was an agreement between husband and wife that money borrowed on notes signed by them should be used in making improvements on her separate estate, and that the loan should be paid out of her separate estate, is sufficient to show an agreement that such money was to belong separately to the wife, and was not to be community property.

5. APPEAL AND ERROR ⬤➡931(3)—PRESUMPTION OF FINDING.

Under Rev. St. 1911, art. 1985, where the jury made no finding as to a certain matter, but the facts disclosed by the record warrant a finding thereon in support of the judgment, it will be presumed that the court made the necessary finding.

6. HUSBAND AND WIFE ⬤➡257—RENTS FROM WIFE'S SEPARATE PROPERTY AS COMMUNITY PROPERTY.

Although the rule that rents arising from wife's separate realty become community property was not changed so as to make such rents the wife's separate property, by Act March 21, 1913 (Acts 1913, c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624]), this statute made a great change in the law respecting such rents, in that the control, management, and disposition were vested in the wife alone, and were no longer subject to the payment of debts contracted by the husband, and so far as the husband's creditors are concerned they occupy the same status as property which is strictly the wife's separate property.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. HUSBAND AND WIFE ⟜249—BORROWED MONEY AS WIFE'S SEPARATE PROPERTY; EFFECT OF AGREEMENT THAT REPAYMENT BE OUT OF RENTS OF WIFE'S SEPARATE PROPERTY.**

Agreement between husband and wife that money borrowed on notes signed by them both should be repaid out of rents of her separate property had the same legal effect in making the borrowed money the wife's separate property as if it had been intended that repayment was to be made out of her separate property.

**8. HUSBAND AND WIFE ⟜266—POSTNUPTIAL AGREEMENT CHANGING COMMUNITY INTO SEPARATE PROPERTY.**

Husband and wife cannot, by mere postnuptial agreement between themselves, change the character of their property to be thereafter acquired so as to convert community into separate property.

**9. HUSBAND AND WIFE ⟜266—GIFTS OF COMMUNITY PROPERTY TO WIFE.**

A husband may make to his wife a gift of his interest in the community property then in esse, when it can be done without injury to the rights of others.

**10. HUSBAND AND WIFE ⟜266—GIFTS OF COMMUNITY PROPERTY TO WIFE.**

While the community status of rents collected from wife's separate property could not be affected by the mere agreement between the husband and wife, made when he conveyed the property to her, that the rents that should thereafter accrue from the premises should be her separate property, yet if such agreement was thereafter observed and actually carried out by delivering the rents into her possession, such collected rents became her separate property, unless the gift was in fraud of creditors' rights.

**11. HUSBAND AND WIFE ⟜269 — GIFT TO WIFE OF RENTS FROM HER SEPARATE PROPERTY.**

Since, under the act of March 21, 1913 (Acts 1913, c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624]), rents from wife's separate property were not subject to the payment of debts contracted by the husband, the donation by a husband to his wife of his community interest in such rents was not in fraud of any rights of creditors, as they had no interest in such rents.

**12. HUSBAND AND WIFE ⟜256—CONVEYANCE TO WIFE AS CONVEYANCE TO HER SEPARATELY.**

The status as wife's separate property of property conveyed to wife is not affected by the fact that the deed does not on its face disclose that the property was conveyed to her as her separate property, where it appears that both husband and wife directed that the deed be made to her for the purpose and with the intent to make the conveyed property her separate property, and that at the time of the delivery of the deed it was their mutual intention that it should be her separate and not community property, and was to be taken in her name to effect that purpose.

**13. HUSBAND AND WIFE ⟜256—PROPERTY PURCHASED AS WIFE'S SEPARATE PROPERTY.**

Where property was acquired after marriage, and deeded by the vendor to his wife, in consideration of separate property of the wife traded for it, the husband and wife also giving their note for a certain sum, and it was the mutual intention of husband and wife that the acquired property should be her separate property, and the title was taken in her name for that purpose, and they also intended that the note should be paid out of the wife's separate funds, and such payments thereon were made from rents accruing from the property subsequent to the taking effect of Act April 4, 1917 (Acts 1917, c. 194 [Vernon's Ann. Civ. St. Supp. 1918, art. 4621]), making rents derived from wife's separate realty her separate property, the acquired property became her separate property, and not community property, notwithstanding the fact that the husband joined in the note and that the deed, though made to the wife, did not disclose that the property was conveyed to her as her separate property.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Trespass to try title by O. R. Armstrong, trustee, against J. K. Turbeville and wife. From judgment for defendants, plaintiff appeals. Affirmed.

Jones, Jones, Hardie & Grambling, of El Paso, for appellant.

C. A. Kinkel and Lea, McGrady, Thomason & Edwards, all of El Paso, for appellees.

HIGGINS, J. Appellant, Armstrong, trustee, brought this suit in trespass to try title against J. K. Turbeville and his wife, Nina Turbeville, to recover certain lots in block 100, Bassett's addition to the city of El Paso, situated on Bliss street; also certain lots in block 63, Franklin Heights addition to said city, known as the Boulevard property. The petition was in the ordinary form of trespass to try title. Defendants pleaded not guilty, and by cross-action Mrs. Turbeville claimed the property as her separate estate.

By supplemental petition the appellant alleged that on January 16, 1912, J. K. Turbeville was the owner of lot 25 in block 82, Magoffin addition to the City of El Paso; that it was the community property of himself and wife; that he was indebted to various parties, and at that time did not have property within the state subject to execution sufficient to satisfy his then existing debts; that said conveyance was voluntary, and made for the purpose of hindering, delaying, and defrauding his creditors; that on or about June 2, 1915, he made permanent and valuable improvements on the property out of the community estate of himself and his wife at a cost to the community estate of $3,800 and of that value to the community; that on June 2, 1915, before the improvements were made, the property was of a value of $4,200; that after the improvements were made it was of the value of $8,000; that at and prior to placing said improvements on the property

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Turbeville was indebted to various parties, naming them.

Wherefore appellant claimed that the aforesaid conveyance by Turbeville to his wife was in fraud of creditors and void. It was further alleged that if Turbeville gave to his wife the improvements placed upon the above-mentioned property on June 2, 1915, then at that time he did not have sufficient property within the state subject to execution sufficient to satisfy his then existing debts, and such gift was in fraud of creditors and void. It was further pleaded that if the property sued for was found not to be the community property of Turbeville and wife, then the said Turbeville exchanged the property in the Magoffin addition with George Pence for said lots in block 63 of the Franklin Heights addition and for two lots in the Cotton addition to the city of El Paso, and that subsequently the two lots in the Cotton addition were exchanged for the lots in block 100 of the Bassett addition, and that at the time of such exchange J. K. Turbeville was indebted on various unsecured claims to the extent of $16,127.26.

By supplemental answer Mrs. Turbeville set up that the conveyance of January 16, 1912, by her husband of the lot in the Magoffin addition was in satisfaction of a pre-existing debt due to her, as her separate property, by her husband; that when the same was conveyed to her it was agreed that she should have all rents to accrue thereon, and that such agreement between herself and husband was observed and carried into execution, in consideration of which she paid all taxes and made all repairs; that the improvements which were placed thereon were paid for by mortgage which she gave upon the land; that the lands sued for were her separate property, and were conveyed to her with the agreement between herself and husband that it should be her separate property, and the same was paid for by property belonging to her separate estate. The foregoing statement of the pleadings shows the issues presented.

Upon the issues thus joined by the pleadings the case was submitted to a jury upon special issues, and upon the findings made judgment was rendered in Mrs. Turbeville's favor.

The Turbevilles were married in January, 1891. Mr. Turbeville was adjudged a bankrupt about October, 1918, and Armstrong became the trustee of his estate. In September, 1907, Turbeville acquired some property on San Antonio street in the city of El Paso. This was lot 25, in block 82, Magoffin addition. By deed dated January 16, 1912, Turbeville conveyed the Magoffin addition property to his wife, the deed stating that it was conveyed to her as her separate property. The lot then had a five-room house, with bath, on it. The deed was recorded January 19, 1912. Thereafter further improvements were added to the Magoffin avenue property with funds obtained from the Texas Bank & Trust Company. The loan made by said bank was evidenced by four notes signed by Turbeville and wife, each in sum of $750, and secured by deed of trust on the Magoffin addition property, dated June 2, 1915.

Thereafter the Magoffin addition property was traded to Geo. Pence. In this trade Pence conveyed to Mrs. Turbeville the Boulevard property in block 63, Franklin Heights addition, and two lots in block 67 of the Cotton addition. The two deeds from Pence to Mrs. Turbeville did not state that the property was conveyed to her as her separate property. The deeds from Pence to Mrs. Turbeville were dated July 31, 1917. Thereafter the Cotton addition property was traded to F. M. Miller for the property on Bliss street in block 100, Bassett's addition. In consummation of this trade Filler conveyed the Bliss street property to Mrs. Turbeville by deed dated March 20, 1918, the deed stating that it was conveyed to the grantee as her separate property.

In answer to the special issues the jury made the following findings:

On January 16, 1912, when Turbeville conveyed to his wife lot 25 in block 82 of the Magoffin addition, he was possessed of property within the state subject to execution sufficient to pay his existing debts, exclusive of the property so conveyed; that he did not so convey said property with intent to delay, hinder, or defraud his then existing creditors; that such property was conveyed by Turbeville to his wife in satisfaction of a pre-existing debt due by Turbeville to his wife, the said debt by Turbeville to his wife being Mrs. Turbeville's separate property; that said property was not more than reasonably sufficient to discharge such debt; that Mrs. Turbeville did not know of the intention of J. K. Turbeville to hinder, delay, or defraud his then existing creditors, if such intention he had; that Geo. Pence, in consideration of the deed to the Magoffin addition property by Turbeville and wife to him on July 31, 1917, deeded to Mrs. Turbeville the property in block 63, Franklin Heights addition, and the two lots in block 67 of the Cotton addition; that the reasonable market value of the lot in the Magoffin addition on July 31, 1917, with the improvements existing on the same, was $7,600, and that its reasonable value on said date with only the improvements thereon existing on January 16, 1912, was $4,600. At the time of the delivery of the deeds to said property by Pence it was the mutual intention of Turbeville and his wife that said property should be the separate property of Mrs. Turbeville, and was to be taken in her name to effect that purpose. On July 31, 1917, the date of the deeds from Pence to Mrs. Turbeville, J. K. Turbeville was not possessed of sufficient property within this state subject to execution to discharge the debts of his then

existing creditors. On June 2, 1915, the date of the deed of trust to the Texas Bank & Trust Company on the Magoffin addition property, J. K. Turbeville was possessed of property within this state subject to execution sufficient to pay his then existing debts. It was not the mutual agreement and intention of Turbeville and his wife, at the date of the conveyance of Pence to Mrs. Turbeville of the lots in the Franklin Heights addition and in the Cotton addition, that said property was to be the community property of Mrs. Turbeville and her husband. As a part of the consideration for the property conveyed to Mrs. Turbeville by Pence, the latter received in cash the sum of $750. As a part of the consideration for the deed to the lots in block 63 of the Franklin Heights addition, Pence received a note in the sum of $1,149.50, signed by Turbeville and wife. There was a mutual agreement or mutual intention on the part of Turbeville and wife at the time of signing said note that the same should be paid entirely out of the separate funds of Mrs. Turbeville.

"Plaintiff's Special Issue G. Do you find that any part of said cash consideration was derived from money received as rents on the Magoffin addition property? Answer: Yes.

"Plaintiff's Special Issue H. Do you find that any part of said cash consideration was derived from any other source? Answer: No.

"Plaintiff's Special Issue I. Do you find that Mrs. Turbeville so mixed the funds, if any, received as rents from the Magoffin addition property with funds received from other sources, if any, that it is impossible for you to determine from the evidence introduced what part, if any, of said cash consideration, if any, was rents, and what part was derived from other sources? Answer: All from rents.

"Plaintiff's Special Issue J. How much, if any, do you find from the evidence of said cash consideration, if any, was derived from rents, and how much, if any, was derived from other sources? Answer: All from rents."

At the time of the making of the $3,000 loan on June 2, 1915, on the Magoffin addition property there was a mutual agreement or mutual intention on the part of Turbeville and his wife that the notes amounting to $3,000 were to be paid entirely out of the separate property of Mrs. Turbeville; that J. K. Turbeville had property within this state subject to execution sufficient to satisfy his existing debts at the date upon which the improvements were placed upon the Magoffin addition property about June, 1915. Turbeville did not have property within this state subject to execution sufficient to satisfy his existing debts at the date of the deed of Geo. Pence on July 31, 1917, nor on March 20, 1918, the date of the deed from Filler to Mrs. Turbeville.

In executing the deed of trust for $3,000 to the Texas Bank & Trust Company on June 2, 1915, there was an agreement between Turbeville and his wife that the money so secured should be applied to making improvements on the land therein mortgaged, and the money so borrowed was applied to improving said mortgaged property, to wit, the property in the Magoffin addition. And at the time said deed of trust was executed and the $3,000 borrowed from the Texas Bank & Trust Company, there was a mutual agreement or understanding between Turbeville and his wife that the loan should be repaid by Mrs. Turbeville out of the rents to accrue from the Magoffin addition property.

Turbeville and wife directed that the deeds from Pence to Mrs. Turbeville, dated July 31, 1917, be made to Mrs. Turbeville for the purpose and with the intent to make the property so deeded her separate property; that the money paid to Pence in the trade made with him on July 31, 1917, was paid from rents of the Magoffin addition property which accrued after July 1, 1913.

The reasonable value of the household and kitchen furniture sold to Pence on July 31, 1917, was $400. When Turbeville conveyed the Magoffin addition property to his wife there was an agreement made between them that Mrs. Turbeville should thereafter receive and hold as her own separate property the rents that should thereafter accrue from the premises free from all claim and right of J. K. Turbeville in such rents, and that this agreement was observed and carried out until the land was conveyed to Pence on July 31, 1917.

### Opinion.

We shall not attempt to discuss in detail all of appellant's various assignments of error and their supporting propositions.

The question which first logically arises is the status of the Magoffin addition property.

[1] The deed of Turbeville to his wife dated January 16, 1912, upon its face discloses that it was conveyed to her as her separate estate. This made the property her separate estate. Kahn v. Kahn, 94 Tex. 117, 58 S. W. 825. Especially is this true in view of the finding that at this time Turbeville was possessed of property within the state subject to execution sufficient to pay his existing debts exclusive of the property conveyed, and that it was not conveyed to delay, hinder, or defraud his then existing creditors, and the further finding that the conveyance was in satisfaction of a pre-existing debt by Turbeville to his wife for funds used by him belonging to her separate estate, and the evidence supports this finding. In the state of the record the conveyance to Mrs. Turbeville was valid, and vested title in her as her separate estate.

The question which next arises is the status of the property after the improvements were placed upon it in June, 1915, appellant contending these improvements were made with community funds, and enhanced its value $3,000, and the community estate to that ex-

tent acquired an interest in the property. It is shown by the evidence that these improvements were made with a loan of $3,000 obtained from the Texas Bank & Trust Company evidenced by four notes of $750 each, signed by Turbeville and wife and secured by lien upon the Magoffin avenue property.

[2, 3] Money borrowed by the husband or the wife, in the absence of an agreement to the contrary, is community property, and this is true though the separate property of one of the spouses is mortgaged to secure it. The presumption is that the borrowed fund belongs to the community. But the right of the wife to borrow money which will be her separate property has been recognized in a number of cases. If the wife borrow money for the benefit of her separate property, intending to repay it out of her separate estate, and both she and her husband intend that the borrowed fund shall belong separately to the wife, such will be its status, though the husband has signed the note and pledged his separate property to secure the loan. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; McClintic v. Midland, etc., 106 Tex. 32, 154 S. W. 1157; Parker v. Fogarty, 4 Tex. Civ. App. 615, 23 S. W. 700; Evans v. Purinton, 34 S. W. 350; Speers Law of Marital Rights, § 321.

[4] The jury has made no finding that it was agreed or intended between Turbeville and wife that the money obtained from the bank was to belong separately to Mrs. Turbeville, but in the light of all the facts and circumstances disclosed by the record such a finding, we think, would be warranted. Sparks v. Taylor, supra.

[5] In support of the judgment it will therefore be presumed that the court found such agreement or intention to exist. Article 1985, R. S. The jury has found there was an agreement that the money was to be used in making improvements on the separate estate of Mrs. Turbeville, and that the loan was to be repaid out of her separate estate. The facts indicated are therefore sufficient to make the money obtained from the bank the separate property of Mrs. Turbeville. Sparks v. Taylor, supra. This being true, the improvements placed upon the Magoffin avenue property with this money became her separate property, and the community had no interest therein.

[6, 7] But in this connection appellant contends there is no evidence to support the finding that it was the agreement and intention of Turbeville and wife that the loan should be repaid out of the separate property of Mrs. Turbeville. There is no evidence that Mrs. Turbeville had any property other than the Magoffin addition property, or any available source of income except the rents from this property. However, she pledged this property, which was her separate estate, to secure the payment of the

216 S.W.—70

borrowed money, and joined in the notes, and possibly this would support the finding indicated. Sparks v. Taylor, supra. But we have concluded that, conceding the finding to be unsupported by the evidence, there is another finding which will support the judgment, namely, the finding that there was a mutual agreement or understanding between the Turbevilles at the time the loan was obtained that the same should be repaid by the wife out of the rents to accrue from the property. It is true that at the date of the loan rents arising from realty belonging separately to the wife become community property. Hayden v. McMillan, 4 Tex. Civ. App. 479, 23 S. W. 430; Schepflin v. Small, 4 Tex. Civ. App. 493, 23 S. W. 432.

And Act March 21, 1913, c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624), did not change the character of such rents so as to make them the separate property of the wife. Tannehill v. Tannehill, 171 S. W. 1050. But this act did make a very great change in the law respecting such rents, in that the control, management, and disposition thereof was vested in the wife alone, and the same were no longer subject to the payment of debts contracted by the husband. After the passage of that act, creditors had no interest in rents accruing from realty owned separately by the wife. So far as creditors of the husband are concerned, they occupy the same status as property which is strictly the separate property of the wife. This being the status of the rents arising from the Magoffin avenue property at the time the loan was made by the bank on June 2, 1915, we think that the agreement and intention of the Turbevilles that the loan should be repaid out of the rents would have the same legal effect in making the borrowed money the separate property of the wife as if it had been intended that repayment was to be made out of her separate property. Emerson, etc., v. Brothers, 194 S. W. 608. Under this view it makes no difference if there is not evidence to support the finding that it was agreed that repayment was to be made out of Mrs. Turbeville's separate property.

When the trade was made with Pence, $750 in cash was paid to him; he also acquired $400 worth of furniture, then in the house on the Magoffin avenue lot. The evidence shows and the jury found that the cash payment represented rents on the Magoffin avenue property theretofore received by Mrs. Turbeville. The furniture had been acquired by Mrs. Turbeville from a former tenant, who became in arrears on the rent subsequently to July 1, 1915, and had turned over the furniture in payment therefor. It is insisted by appellant that this cash payment and furniture belonged to the community, and, having been traced into the

property sued for, the community had a pro tanto interest in such property.

The jury has found that when Turbeville conveyed the Magoffin addition property to his wife there was an agreement made between them that Mrs. Turbeville should thereafter receive and hold as her own separate property the rents that should thereafter accrue from the premises free from all claim and right of J. K. Turbeville in such rents, and that this agreement was observed and carried out until the land was conveyed to Pence on July 31, 1917. Turbeville testified that up until the time they conveyed to Pence he had been collecting the rents for his wife, and turned them over to her; that he did not know what she did with all the money; that she made improvements on the property, kept up repairs, and deposited some in bank in her own name.

[8] It is true, as asserted by appellant, that husband and wife cannot by mere postnuptial agreement between themselves change the character of their property to be thereafter acquired so as to convey community into separate property. Cox v. Miller, 54 Tex. 16; Engleman v. Deal, 14 Tex. Civ. App. 1, 37 S. W. 652; Suggs v. Singley, 167 S. W. 241; Speer's Law of Marital Rights, §§ 50, 297, and cases there cited.

[9, 10] But this rule has no reference to the well-recognized right of the husband to make to his wife a gift of his interest in the community property then in esse, when it can be done without injury to the rights of others. Jordan v. Marcantell, 147 S. W. 357. This is simply doing with his property what he has the right to do. Hence, while it may be conceded that the community status of the rents collected was not affected by the mere agreement between Turbeville and his wife, made when he conveyed the property to her yet if this agreement was thereafter observed and actually carried out, and the rents delivered into possession of the wife, as the evidence discloses and the jury has found, then the collected rents became the separate property of Mrs. Turbeville, unless the gift was in fraud of the rights of creditors. Jordan v. Marcantell, supra; Bruce v. Koch, 40 S. W. 626.

[11] In this connection it may be noted that, under the act of April 4, 1917 (chapter 194, Acts 1917 [Vernon's Ann. Civ. St. Supp. 1918, art. 4621]), the rents accruing subsequent to the date that law became effective were the separate property of Mrs. Turbeville, so the inquiry narrows itself down to a consideration of the validity of the gift from Turbeville to his wife of the rents collected between June, 1915, and the date of the act of April 4, 1917, became effective. Under the ruling heretofore these rents were from the wife's separate property, and under the act of March 21, 1913, were not subject to the payment of debts contracted by the hus-

band. His creditors have no interest in these rents. Hence the donation by Turbeville to his wife of his community interest in such rents was not in fraud of any right of creditors, and as to them was valid. Emerson v. Brothers, supra; Redlick v. Williams (Sup.) 5 S. W. 376; McDannell v. Ragsdale, 71 Tex. 26, 8 S. W. 625, 10 Am. St. Rep. 729; Hargadene v. Whitfield, 71 Tex. 488, 9 S. W. 475; Cameron v. Fay, 55 Tex. 63; Speer's Law of Marital Rights, § 351.

[12] Another contention of the appellant arises out of the fact that the deeds from Pence to Mrs. Turbeville did not upon their face disclose that the property was conveyed to her as her separate property. This is immaterial, in view of the findings of the jury that the Turbevilles directed that the deeds be made to her for the purpose and with the intent to make the property conveyed her separate property, and that at the time of the delivery of the deeds it was their mutual intention that it should be her separate property, and was to be taken in her name to effect that purpose. Oil Co. v. Choate, 215 S. W. 118; Higgins v. Johnson, 20 Tex. 389, 70 Am. Dec. 394; Kahn v. Kahn, supra, and cases there cited.

The evidence supports these findings. It is asserted there is no evidence to support the finding that it was the mutual agreement or intention of Turbeville and wife at the time of signing the note given by them for $1,149.50 in part payment for the Franklin Heights property acquired from Pence that the same should be paid entirely out of the separate funds of Mrs. Turbeville. This is overruled for the reason that Mrs. Turbeville testified that the agreement between her and her husband was that she was to pay the note; that she had gotten the rents off the property ever since she acquired it from Pence, and out of the rents had kept the interest paid up and paid for such repairs as had been made; and that her husband had paid nothing. In this connection it should be noted that prior to the conveyance by Pence the act of April 4, 1917, (chapter 194) had become effective, and under this law rents derived from real estate owned separately by the wife are her separate property.

[13] As to this property in the Franklin Heights addition acquired from Pence, by deed dated July 31, 1917, it thus appears that the Magoffin avenue property, the separate property of the wife, was traded for it, and in addition the Turbevilles gave their note for $1,149.50; that it was the mutual intention of the Turbevilles that the property thus acquired should be the wife's separate property, and title was to be taken in her name to effect that purpose; that it was their intention that the note should be paid out of the wife's separate funds, and that such payments as have been made thereon

have been made out of the rents accruing from the property, subsequent to the date the act of April 4, 1917, became effective. Upon this state of facts we are of opinion that the Franklin Heights property became the separate property of the wife, although the husband joined in the note given to Pence, and the deed though made to the wife did not upon its face disclose that it was conveyed to her as her separate property. Sparks v. Taylor, supra; McBride v. Banguss, 65 Tex. 174; McClintic v. Midland, etc., 106 Tex. 32, 154 S. W. 1157; Ullmann v. Jasper, 70 Tex. 446, 7 S. W. 763; Schuster v. Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327; McBride v. Witwer, 60 Tex. Civ. App. 223, 127 S. W. 902; Cavil v. Walker, 7 Tex. Civ. App. 305, 26 S. W. 854; Cobb v. Trammell, 9 Tex. Civ. App. 527, 30 S. W. 482.

The views expressed dispose of all material questions of law presented by this appeal affecting the substantial rights of the parties.

Various assignments complain of rulings upon evidence, the submission and refusing of issues, alleged errors in the charge, and the sufficiency of the evidence to support findings made. These have all been duly considered, and the conclusion reached that they present no reversible error.

Affirmed.

⬡⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes