**EASTHAM et al. v. JONES et al.  (No. 8092.)**

(Court of Civil Appeals of Texas.  Galveston.
Dec. 7, 1921.)

1. Husband and wife ☞257—Increase of live stock of wife prima facie common property.

Increase of cow given to wife by father is prima facie common property of her husband and herself.

2. Husband and wife ☞137(7)—Mortgage by husband of separate property of wife did not affect her rights.

Where a husband gave a mortgage upon cattle, among which were included some which he had previously given to his wife, without her consent, such mortgage did not affect her rights in her separate property, although mortgagee had no knowledge of her ownership.

3. Husband and wife ☞265½, New, vol. 14A Key-No. Series—Wife need not give notice to possible creditor of husband of ownership of stock.

The fact that the law gives the wife control and management of her separate personal property does not require her to give notice to those who might credit her husband that she owns certain cattle, in order to protect them from seizure and sale for the payment of her husband's debts, although they are treated about the home in the same manner as if they were community property.

4. Appeal and error ☞1070(2)—Finding of value of property in replevin suit held harmless.

Defendant in action to recover personal property was not prejudiced by a finding of the jury as to the market value of the property without evidence to support it, where the judgment rendered was for the recovery of the property only, and not for its value.

Appeal from Walker County Court; Leon L. Mott, Judge.

Suit by Will Jones against B. A. Eastham and another, in which Lettie Jones intervened.  From a judgment in favor of the intervener, defendants appeal.  Affirmed.

Dean & Humphrey, of Huntsville, for appellants.

M. E. Gates and A. T. McKinney, both of Huntsville, for appellee.

LANE, J.  This suit was instituted by appellee, Will Jones, against appellant, B. A. Eastham, in the county court of Walker county, on 7th day of February, 1919, for the possession of 10 head of cattle described in the original petition.  A writ of sequestration was obtained by the plaintiff, which was returned not executed.  Thereafter, on the 13th day of September, 1919, the plaintiff amended his petition, and thereby made Luther Eastham, Jr., who was at that time in possession of said cattle, a party defendant, alleging that he had acquired the cattle from B. A. Eastham and was in possession thereof.

The plaintiff Will Jones then obtained a second writ of sequestration, which was levied upon the cattle in possession of defendant Luther Eastham, Jr., and Luther Eastham, Sr., thereupon filed his replevin bond, and the cattle were by virtue thereof turned over to him. Lettie Jones, wife of Will Jones, by permission of the court intervened in the suit on the 23d day of August, 1290, and in her petition of intervention alleged that the cattle were her separate property, and prayed for judgment against the plaintiff and both defendants for the title and possession of said cattle.

It was the contention of Lettie Jones that the cattle were the increase of a certain cow given her by her father, which were born after her marriage with the original plaintiff, Will Jones, and that after they were born, Will Jones gave them to her to be possessed and owned by her as her separate property, and that they were in existence and were so given to her prior to the 16th day of March, 1915.

The undisputed evidence shows that on the 16th day of March, 1915, the plaintiff Will Jones executed and delivered to defendant B. A. Eastham his promissory note for the sum of $437.60, payable on the 1st day of October, 1915, and at the time of execution and delivery of said note he executed to B. A. Eastham a mortgage upon the cattle involved in this suit to secure the payment of said note.  On the 7th day of February, 1919, said note being due and unpaid, B. A. Eastham, the holder and owner of the same, took possession of the cattle mortgaged, as he was authorized to do by said mortgage, and sold them for the sum of $325 cash, and applied the proceeds of such sale, first, to the payment of the expense incurred in making such sale, and then applied the balance as a credit upon said note.

It was the contention of the defendants, as pleaded by them, that at the time the cattle were mortgaged to B. A. Eastham he knew that the cattle claimed by Lettie Jones, same being some of the cattle described in the mortgage, were the increase of cows claimed by Lettie Jones, wife of defendant Will Jones, during the marital relations of said parties; that he knew that the cattle had at all times been in the possession of Will Jones, who was claiming them, and that he had no notice or knowledge before the execution of said mortgage that the cattle were either owned or claimed by Lettie Jones as her separate property, if they were then so owned and claimed by her; that he was an innocent lienholder in good faith and for value without notice of the claim of ownership to said cattle by Lettie Jones, and therefore she should not be

permitted to recover said cattle the title and possession to which had passed from B. A. Eastham to Luther Eastham, Jr.

The case was submitted to a jury. The court gave the jury the following instructions:

"To enable you more intelligently to answer certain of the questions propounded to you, you are instructed that the increase of cattle owned by the husband or wife at the time of marriage or given to either of them after marriage becomes and is the community property of the husband and wife, and in this case the increase of the cow which was given to the intervener, Lettie Jones, by her father was community property of plaintiff and said intervener, unless the plaintiff Will Jones actually gave the said increase to his wife, the said intervener, Lettie Jones, from time to time as such increase was born, or thereafter."

After giving the above instructions the court propounded to the jury certain questions, in answer to which they found that Will Jones did give to Lettie Jones, prior to March 16, 1915, the increase of the cow originally given her by her father as they were born; that the mortgage given by Will Jones to B. A. Eastham on the 16th day of March, 1915, did cover four head of said cattle so given by Will Jones to Lettie Jones, and that of said cattle given to Lettie Jones, B. A. Eastham took, under his mortgage on the 7th day of February, 1919, two brown cows, one brindle cow, and one red and white spotted cow, and that the market value of each of the cows so taken by B. A. Eastham under his mortgage was $45.

Upon the answers of the jury the court rendered judgment in favor of Lettie Jones against both defendants, B. A. Eastham and Luther Eastham, Jr., for the four head of cattle found by the jury to have been given to the said Lettie Jones by the plaintiff Will Jones, and being four of the cattle seized by the defendant B. A. Eastham, and under his mortgage now in possession of the defendant Luther Eastham, Jr. From the judgment so rendered the defendants B. A. Eastham and Luther Eastham, Jr., have appealed.

Appellants urge two and only two reasons why the judgment appealed from should be reversed. They are: First, that, although they had in proper time and manner requested the court to submit to the jury the inquiry as to whether or not B. A. Eastham had any notice or knowledge, on or before the 16th day of March, 1915, the time he took his mortgage from Will Jones, that the property conveyed was claimed by Lettie Jones in her own separate right, the court erroneously refused to submit such inquiry; and, second, that the finding of the jury that the four head of cows which they had found belonged to Lettie Jones and which were taken by B. A. Eastham under his mortgage were of the market value of $45 each is against the great weight and degree of credible evidence and is unsupported by any evidence. These contentions will be discussed and disposed of in the order named.

That the cows adjudged to be the property of Lettie Jones were the increase of the cow originally given her by her father, and that they were in existence prior to the execution of the mortgage by Will Jones to B. A. Eastham on the 16th day of March, 1915, is conceded by all parties. The jury found that these cows were given to Lettie Jones by Will Jones prior to the execution of the mortgage, on the 16th day of March, 1915, and this finding is not challenged by appellants.

[1] There is neither pleading nor evidence raising the issue as to whether Will Jones was indebted to B. A. Eastham at the time he gave the cows to Lettie Jones so as to raise the further inquiry as to whether or not Will Jones made such gift with the intent to defraud B. A. Eastham or any other creditor. We think that it was shown that B. A. Eastham, prior to taking his mortgage from Will Jones, knew that the cows given to Lettie Jones were the increase of the cow given to her by her father, which would make them, prima facie, the common property of Will and Lettie Jones.

[2] We also think that we may assert, without fear of successful contradiction, that as the cows were given to Lettie Jones by her husband, Will Jones, prior to the time he contracted the debt, to secure which he gave the mortgage to Eastham, such gift to Lettie Jones passed such title as Will Jones had in the cows to Lettie Jones, and that by such gift the cows became the separate property of Lettie Jones, and no mortgage given upon said cows after such gift, without the consent of Lettie Jones, would affect her rights. Therefore the inquiry as to whether B. A. Eastham knew, on or before the time he took his mortgage, that the cows which had at one time been the common property of Will and Lettie Jones had become the separate property of Lettie Jones by gift from Will Jones, was immaterial, and an impertinent inquiry, as an affirmative answer to such inquiry could not have affected the right of Lettie Jones to hold her cows from the mortgage of Eastham. Certainly the fact that B. A. Eastham knew that the cows were at one time the common property of Will and Lettie Jones, coupled with the further fact that he did know of the gift to Lettie, would not subject the cows actually owned by Lettie to the mortgage given by Will Jones to Eastham, which covered such cows.

[3] It is not contended that Lettie Jones has done or left undone anything which would estop her from asserting her claim to the cows as against the mortgage of Eastham, unless it be contended she should have given Eastham notice that the cows had been given to

her. There is no evidence tending to show that Lettie Jones knew that Will Jones contemplated giving a mortgage upon her cows to Eastham. We know of no law that would require Lettie Jones, under the facts of this case, to give notice to B. A. Eastham, or to any one else, that the cows in question had been given to her, and that they were her separate property, in order to protect them from seizure and sale for the payment of her husband's debts. The fact the law gives the wife control and management of her separate personal property does not require her to give notice to those who might credit her husband that she owned the property, in order to protect it from seizure and sale for the payment of her husband's debts, although it was used about the home in the same manner as if it had been community property. Burkitt v. Moxley, 206 S. W. 373; Armstrong v. Turbeville, 216 S. W. 1101; Walker v. Farmers' & Merchants' Bank, 146 S. W. 312. In the case last cited it was said:

"It is contended on the part of appellee, however, that our registration laws provide that all property, real or personal, which may be owned or claimed by any woman at the time of her marriage, or which she may acquire afterwards, by gift, devise, or descent, may be scheduled and filed with the county clerk of the county in which the property is situated, and recorded in a book kept for that purpose; and it is only when such registration is made that subsequent mortgagees or purchasers from the husband are not innocent holders. We differ with appellee in this contention. It is true that article 4655, R. S., provides for the recording by the wife of a schedule of her separate property; and article 4659 declares that the registration of any such schedule of the wife's separate property, made in accordance with the provisions of chapter 4, shall be conclusive as against all subsequent creditors of and purchasers from her husband; but it has been held by our Supreme Court, in Le Gierse v. Moore, 59 Tex. 470, that a failure on the part of the wife to file and record such schedule of her separate property will not invalidate her right, or have the effect of making the same liable to seizure and sale by a creditor for the debt of her husband. See, also, in this connection, Speer on Married Women, par. 134, p. 137; Edrington v. Mayfield, 5 Tex. 383; Dority v. Dority, 30 Tex. Civ. App. 216, 70 S. W. 340; Rev. St. art. 2967. It is likewise true that the latter article provides that during the marriage the husband shall have the sole management of his wife's separate property. This, however, does not invest him with the right of property therein, nor give him the right of disposition thereof. Hence the contention of appellee that the husband, by reason of such possession of his wife's separate property, in the absence of a recorded schedule thereof, as provided by the statute, would give him the right to mortgage or sell such property cannot be maintained."

It is unnecessary to pursue this discussion further. The court did not err in refusing to make the inquiry insisted upon by appellants.

[4] We now return to a discussion of the second contention. It is true, as contended by appellants, that there was no evidence to support the finding of the jury that the market value of each of the cows was $45, but we conclude that, in view of the fact that the judgment rendered was for the recovery of the cows only, and not for their value, any other recovery from appellants, such finding became of no effect whatever, and therefore resulted in no injury to appellants, and therefore no reversal should be had upon the second contention.

For the reasons pointed out we overrule both of the contentions of appellants and affirm the judgment.

Affirmed.