**SPENCER et al. v. PETTIT et al.**
(No. 874–4356.)

Commission of Appeals of Texas, Section B.
Feb. 15, 1928.

1. **Husband and wife** ☞274(1)—**In absence of administration or guardianship with partition, surviving husband and children became tenants in common of community property.**

On death of wife, her half of the community estate immediately vested in her children, and thereafter, in absence of administration or guardianship with partition, surviving husband and children became tenants in common of the property, each being entitled to occupation, but neither entitled to right of disposition of the whole.

2. **Husband and wife** ☞274(1)—**Trusts** ☞359(1)—**Husband's disposition of community property held wrongful as to children who could recover value thereof or property into which they could trace proceeds.**

Husband's disposition of community property after death of wife in acquiring other property was wrongful as to children of the marriage, regardless of his lack of fraudulent or wrongful intent, and children would have choice of remedies between proceeding against their father for value of properties wrongfully disposed of, with interest, or for recovery of other properties into which they could trace their own property or its proceeds.

3. **Trusts** ☞372(1)—**Burden of proof is on children suing for community property used by father to acquire other property.**

Children suing father for value of their interest in community property disposed of by father after his wife's death in acquiring other property in exchange therefor, or for property into which they trace proceeds, have burden of alleging and proving facts entitling them to recover.

4. **Trusts** ☞354—**Children's right to recover property acquired by father in exchange for community property includes its enhanced value.**

Children's right to recover property acquired by their father in exchange for community property after death of mother includes its increase or enhanced value, unaffected by fact that father had bestowed labor and care in the transaction by which it was acquired, since such disposition of children's funds would in law be wrongful, and his holding would be in

trust for them, and he would not be allowed to charge them for his services, or otherwise make a profit out of such wrong.

**5. Trial ☞350(3)—Submission of issue whether property was acquired by husband wholly from proceeds of community property held not justified, where husband gave his notes for 97 per cent. of price.**

Where undisputed evidence, in action by children for recovery of title and partition of lands purchased by defendants from their father, on the ground that community property in which they had interest through their deceased mother was used therein, showed that property was purchased on credit to extent of 97 per cent. of purchase price, evidenced by father's notes, submission of issue whether the property was acquired wholly "by the use and investment of the proceeds" of the community property was not justified.

**6. Husband and wife ☞274(1)—That father's purchases partly with community property after wife's death were chiefly on credit is not conclusive on respective rights of children and father.**

That purchases by father, made partly by exchange of community property therefor after wife's death, were for most part on credit, would not necessarily disprove children's right to recover specific property purchased, nor establish father's right to a separate interest in the lands to extent of credit extended to him, but matter depends on father's intention in the transactions.

**7. Trusts ☞372(2)—Husband's remarriage held immaterial on right of children by first wife to trace community property of first marriage into property acquired by husband.**

That husband was married to second wife when he acquired land in controversy held immaterial on question of right of his children by his first wife to recover proceeds of community property of their father and mother traced into the property so acquired.

**8. Appeal and error ☞1122(2)—On appeal, Court of Civil Appeals cannot make fact finding on conflicting evidence as basis for its judgment.**

The Court of Civil Appeals has no authority on appeal to make a finding of fact on conflicting evidence as a predicate for its judgment and to supply finding on issue not submitted to the jury, and which defect was specifically pointed out by objections.

**9. Husband and wife ☞274(1)—Land acquired by father would become joint property of himself and children, if he intended to make deferred payments thereon out of common property of himself and children.**

If father, in executing notes for deferred payments on land purchased, intended to pay such notes out of the common property of himself and children which had previously constituted community property of himself and deceased wife, land so acquired would become joint property of himself and children.

**10. Evidence ☞590—Father's testimony respecting intention of paying for land acquired by him out of common property of himself and children is not conclusive; he being interested.**

Father's testimony on issue whether it was his intention to pay for land out of the common property of himself and children, so as to make property acquired the joint property of himself and children, would not be conclusive, since he is an interested witness, and his testimony is not beyond contradiction.

**11. Trusts ☞372(2) — Father's remarriage held circumstance bearing on his intention to pay therefor out of common property of himself and children.**

Father's remarriage held circumstance to be considered by jury on question whether it was his intention to pay for notes given therefor out of common property of himself and children by his first wife, so as to make property so acquired the joint property of himself and children.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Robert Pettit and others against W. E. Spencer and others. Judgment for minor plaintiffs against defendants, and for defendants against adult plaintiffs was affirmed by the Court of Civil Appeals (268 S. W. 779), and W. E. Spencer and others bring error. Reversed and remanded.

L. H. McCrea, of Roby, Stinson, Coombes & Brooks, of Abilene, Charles E. Coombes, of Stamford, E. T. Brooks and James P. Stinson, both of Abilene, and Bean & Klett, of Lubbock, for plaintiffs in error.

Vickers & Campbell and G. E. Lockhart, all of Lubbock, for defendants in error.

SPEER, J. J. H. Pettit and Amanda Elizabeth Pettit had nine children when on April 1, 1910, the mother died. At the time of her death the Pettits owned considerable property, both personal and real, in Lubbock county, where the husband was engaged in the ranching business. Amanda Pettit died intestate and there was no administration whatever upon her estate. J. H. Pettit married again. From and after the death of his first wife he continued the ranch business as it had been conducted before her death, without making any sort of partition of the property with his children. This suit was instituted by the children against their father, W. E. Spencer, J. E. Spencer, and a number of other defendants, to recover their interest in certain properties, alleging that the same had been purchased by their father after their mother's death with properties and the proceeds of properties belonging to them; that the Spencers were the owners of such property, with notice of their rights, and further prayed for a partition. The pleadings were broader than here stated, but, in view of the issues submitted and the judgment rendered, the other allegations become immaterial.

The cause was submitted upon special issues, and a judgment entered in favor of six of the plaintiffs, who were minors, and against the other three, adults, with a partition of the lands as prayed for. The Spencers and the adult plaintiffs appealed. The Court of Civil Appeals affirmed the judgment in all respects. 268 S. W. 779.

As already indicated, the scope of the pleadings was very much broader, but, as finally resolved, the case was one for recovery of title and partition of certain lands purchased by the Spencers from J. H. Pettit. The issues submitted to and found by the jury were as follows:

"(1) Was the property that was sold by J. H. Pettit on July 2, 1919, and described in the contract of said date between W. E. and J. E. Spencer and J. H. Pettit and others, acquired by the use and investment of the proceeds of the property, real or personal, owned and held by J. H. Pettit and his deceased wife, A. E. Pettit, or either of them, at the time of her death, or from the increase of said property?

"(2) Did the defendants W. E. and J. E. Spencer, or either of them, have notice of any claim of plaintiffs to the property in controversy other than sections 8, 10, and 12, at the time of the execution and delivery of the deed?"

The jury answered each of these issues in the affirmative. Upon this verdict the court rendered judgment for the six minor plaintiffs for their interest in the lands and for a partition of the same.

The defendants, the Spencers, objected to special issue No. 1 in substance, because it submitted whether or not the properties involved were acquired by J. H. Pettit by the use and investment of the proceeds of the property of plaintiffs because there was no evidence that all of such property was thus acquired, and at the same time requested the following instruction, which was refused:

"Was the property in controversy, or any part thereof, acquired by the labors, credit, or business ability of J. H. Pettit and his present wife, Mamie Pettit?"

The specific properties in which the plaintiffs recovered an interest were acquired by J. H. Pettit through various deeds after his second marriage. It is therefore apparent the minor plaintiffs have recovered upon the theory of a constructive trust in their favor because of their father's use of funds and properties belonging to them in the acquisition of the properties in controversy, title to which was taken in his own name.

There can be no dissent from the views expressed by the Court of Civil Appeals as to the law upon the main issues discussed in that court's opinion.

[1-3] Upon the death of Amanda Elizabeth Pettit her one-half of the community estate of herself and husband immediately vested in her children. Thereafter, in the absence of administration or guardianship with partition, the surviving husband and children became tenants in common of the property, each being entitled to the occupation, but neither entitled to the right of disposition of the whole. The father's continued occupation and use of the property was not wrongful, but his disposition thereof was. It can make no difference that such disposition was without fraudulent or other wrongful intention, and upon such disposition the children would have their choice of remedies as between a proceeding against their father for the value of the properties wrongfully disposed of, with interest, or for the recovery of other properties into which they could trace their own property or its proceeds. In either case the burden would be upon the children to allege and prove the facts entitling them to recover, which in the latter case, would impose upon them the duty of tracing their funds or property into the acquisition of the specific property sought to be recovered.

[4] The recovery of such specific property would, of course, include its increase or enhanced value, and would not in any wise be affected by the fact that the father had bestowed labor and care in the transaction by which it was acquired. His disposition of the children's funds under such circumstances would in law be wrongful, and his holding would in law be in trust for them. He would not be allowed to charge them for his services or otherwise to make a profit out of his own wrong. These principles are elementary, and are fully recognized and discussed by the Court of Civil Appeals. To cite further authorities for them would be carrying coals to Newcastle.

[5] The specific properties recovered in this case were acquired by the father through deeds showing that in the purchase a small payment of cash or property, in each instance was made, and a note or notes executed for the balance of the purchase money. The properties thus incumbered, along with other property, personal and real, were conveyed to the Spencers in exchange for other property; the Spencers in each instance assuming to pay the outstanding notes as liens against the property. None of such notes was ever paid by Pettit, nor it seems by the Spencers, but the same remained a charge upon the land at the time of the judgment in this suit.

[6] It is clear the recovery herein has been had upon the theory that the lands involved were acquired wholly "by the use and investment of the proceeds of the property, real or personal, owned and held by J. H. Pettit and his deceased wife, A. E. Pettit," or, in other words, the estate of the father and the children. But it is equally clear that the undisputed evidence does not justify the submission of any such theory, for it cannot be said that the consideration to the extent of the credit evidenced by Pettit's notes (which

is stated by plaintiff in error to be 97 per cent. of the purchase price) was the proceeds of property belonging to the first community. There undoubtedly was evidence sufficient to take to the jury the issue of the character and amount of the consideration actually paid in the purchase, but there is no evidence whatever to justify the assumption that all of the consideration was paid. Such assumption is contrary to the undisputed evidence. The fact, however, that the purchases were for the most part on credit would not necessarily disprove the plaintiffs' right to recover, nor establish the father's right to a separate interest in the lands to the extent of the credit thus extended him. The solution depends entirely upon the intention of the father in the transactions.

[7] The fact that J. H. Pettit was married to his second wife at the time he acquired the properties in controversy is of no importance at this point. Her property rights as a member of the second community could extend only to acquisitions by herself or her husband during that marriage. If for reasons of law or equity the husband's purchases were in trust for his children by the former marriage, then he never acquired any separate property interest whatever, for which reason, of course, the wife as a member of the community never acquired any. The rights of the children and the duty and liability of the father in such a transaction would be precisely the same whether he had remarried or not.

The Court of Civil Appeals has not overlooked the distinction between payment actually made and payment promised in determining the extent of the trust, but they say:

"J. H. Pettit, the trustee, paid out of the trust funds its pro rata of the cash consideration, and also when payments were made on the deferred payments he paid out of the trust funds its pro rata on such deferred payments. True there was no agreement shown between J. H. Pettit and the minor plaintiffs, that the notes evidencing the deferred payments should be paid by the trust fund proportionally, but the children, being minors, could not make such agreement, and the intention must be sought from the acts, transactions, and conduct of the business by J. H. Pettit, the trustee, and the record warrants the conclusion that his intentions were to continue the payment of notes given for property out of the trust funds and other funds jointly as had been his practice since the death of his first wife, so the separate character of the interest of the minor plaintiffs was maintained."

[8] In referring to the fact that the father paid out of the trust funds deferred payments upon purchases, the Court of Civil Appeals referred to transactions other than the purchase of the particular lands involved in this suit, for it is undisputed that these deferred payments were never paid by him or any one else. That court has correctly announced the principle that as to such deferred payments the equitable title would follow the intention of the father, and it has found, so far as it could, that his intention at the time was to make payments of such deferred purchase money out of the trust funds as had been his practice theretofore. Such a finding, when rightly made, would support a recovery by the children. But the Court of Civil Appeals has no authority to make a finding of fact as a predicate for its judgment where the evidence is conflicting. In the present case it is thus supplying a finding upon an issue not submitted to the jury, and which defect in the charge was specifically pointed out by the defendants' objections thereto. This lack of power is analogous if not identical with the lack of power in that court upon reversing a trial court to render judgment where the facts are conflicting. It has often been held this cannot be done. Patrick v. Smith, 90 Tex. 267, 38 S. W. 17; Thomas v. Morrison, 92 Tex. 329, 48 S. W. 500; Choate v. San Antonio & A. P. Ry. Co., 91 Tex. 406, 44 S. W. 69; Easthan v. Hunter, 98 Tex. 560, 86 S. W. 323; Reppond v. National, etc., Co., 100 Tex. 519, 101 S. W. 786, 11 L. R. A. (N. S.) 981, 15 Ann. Cas. 618.

[9] It is true, we think, that, if the father at the time of the acquisition of the lands in controversy executed the notes for the deferred payments with the intention to make payment thereof out of the common property of himself and his children, the acquisition would become the joint property of himself and children; that is, it would become of the same estate as that given, and intended to be given, in exchange for it. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Emerson, etc., Co. v. Brothers (Tex. Civ. App.) 194 S. W. 608; Armstrong v. Turbeville (Tex. Civ. App.) 216 S. W. 1101; Speer's Law of Marital Rights, §§ 321, 370. But no such issue was submitted in the trial court, and the same was in substance refused to be submitted by overruling the defendants' objections to the defective manner in which the issue was submitted.

[10] It cannot be said that the evidence of intention was undisputed. The taking of the deed in his own name is a circumstance tending to disprove any intention that the acquisition should belong to his children. And, furthermore, if the father had testified specifically that he intended to make payment in such way, yet it would not be conclusive, for he was obviously a much interested witness, and his testimony would not be beyond contradiction. H. E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971; West Lumber Co. v. Goodrich, 113 Tex. 14, 223 S. W. 183; Payne v. Malone (Tex. Civ. App.) 239 S. W. 998.

[11] We have said that, at the point of the children's property rights, Pettit's remarriage was of no importance in the case, but at this

point—that is, his intentions as to payment of his notes given in the purchase of the lands involved—the remarriage is of significance for whatever it is worth with a jury. Undoubtedly the father had the right at any time to partition the estate with his children. At all times he was the owner of one-half the profits of the common estate of himself and first wife. The existence of a second marriage therefore would itself be a circumstance bearing upon his intentions in the respect under consideration. So that the attempted finding by the Court of Civil Appeals upon this important issue cannot relieve the error of the trial court, for which the judgment ought to have been reversed. We are not approving the form of the defendants' requested issue, but the reversal is put upon the objection to the issue as submitted. Gulf, etc., Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183. The special issue is not accurate; it includes elements, viz. "labor" and "business ability," that may, for reasons given in this opinion, be recoverable by the children. The element of "credit," for reasons already stated, may or may not be recoverable.

We therefore recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and the cause remanded to the trial court for another trial not inconsistent with this opinion.

PER CURIAM. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

CURETON, C. J., not sitting.