**SPENCER et al. v. PETTIT et al.**

No. 1374—5535.

Commission of Appeals of Texas, Section A.

Jan. 21, 1931.

Charles E. Coombes, of Stamford, and Bean & Klett, of Lubbock, for plaintiffs in error.

G. E. Lockhart and Vickers & Campbell, all of Lubbock, for defendants in error.

CRITZ, J.

This suit has been tried twice in the district court and twice appealed; this being the second appeal. The opinion of the Court of Civil Appeals on the first appeal is found in 268 S. W. 779, and the opinion of the Commission in 2 S.W.(2d) 422, 423. The opinion of the Court of Civil Appeals in the instant appeal is found in 17 S.W.(2d) 1102. We refer to these several opinions for detailed statements of the issues here litigated. However, we will make a sufficient statement for this opinion to be complete within itself.

It is shown that J. H. Pettit and Amanda Pettit were husband and wife on and prior to April 1, 1910. On that date Amanda Pettit died intestate. She left surviving her nine children, six of whom are defendants in error here, and J. H. Pettit, her surviving husband. For the purposes of this opinion we will say that at the time of her death the community property of J. H. Pettit and Amanda Pettit consisted of three sections of land, and certain personal property. The personal property consisted of cattle, horses, mules, farming implements, household furniture, etc. There is considerable dispute about the value of this personal property, but under the view we take of this case the exact value is immaterial. It is sufficient to say that such personal property, under the findings of the jury, supported by competent evidence, had a net value over and above incumbrances, such as chattel mortgages, and community debts of several thousand dollars.

Since the death of Amanda Pettit, the six minor children have received their part of the land belonging to the community estate at the time of their mother's death, but have never received any part of the personal property.

At the time Amanda Pettit died, J. H. Pettit was engaged in the ranching business. This business was carried on on the three sections of land then owned by them in community, and considerable leased lands adjoining. After the death of Amanda Pettit, J. H. Pettit continued the ranching business in much the same manner that he had conducted it during the lifetime of his wife. He continued in the possession of the personal property of the community, and sold the same. He took the proceeds thereof and the increase, and invested the same in other properties of a like or similar character, and mixed and mingled such proceeds with funds and properties which he acquired after his wife's death. He continued to do this for years, buying and selling all of the time. He also during this time borrowed money at various and sundry times in large and small amounts and from various parties, including banks and individuals. He would buy cattle, sheep, and other live stock with these funds so acquired and later sell the same, together with their increase, and pay the debts for the borrowed money. These borrowed funds were also mixed and mingled in such a manner that they lost their identity. In the course of these dealings he so mixed and mingled the proceeds of the original personal property on hand when his wife died that it lost its identity, and the record fails to in any manner account for what became of same except as shown above.

After the death of Amanda Pettit in 1910, J. H. Pettit purchased, and had conveyed to him individually, six tracts of land in Lubbock county, Tex., aggregating about 5,940.6 acres. The following is a statement showing the several tracts, dates of purchase, price paid, etc., of these six tracts:

First tract: W. H. Lewis land, being 222.4 acres out of section 37, block P; purchased December 20, 1912; consideration, $2,224; $500 cash, balance notes.

Second tract: J. S. Duggan land, being the north one-half of section 25, block P, 320 acres; purchased April 26, 1916; consideration $4,862; $400 paid cash, balance notes.

Third tract: Canovan & Bronson land, being survey 9, block P, 640 acres; purchased November 21, 1916; consideration $9,600; $1,000 cash, balance notes.

Fourth tract: L. M. Davidson land, being survey 7, block P, 640 acres; purchased April 1, 1917; consideration $9,600; $2,000 cash, balance notes.

Fifth tract: Whaley & Jones land, being section 11, 640 acres; 149.65 acres out of survey 43, block P; south three-fourths of section 132, block A; 640 acres section 26, block P; 640 acres section 27, block P; 640 acres section 28, block P; 640 acres section 29, block P; total 3,349.65 acres; purchased August 29, 1917, the deed reciting a consideration of $78,653; all notes, some assumed and some executed by J. H. Pettit.

Sixth tract: Tiffany & Jones land, being west one-half of section 10, block D–T; purchased January 1, 1918; consideration $7,800; $1 paid cash and balance notes.

It is shown that J. H. Pettit and his second wife conveyed all of the above lands to W. E. and J. E. Spencer by general warranty deed, dated September 22, 1919. It is further shown by the deed to the Spencers that they assumed liens against the several tracts so conveyed to them aggregating many thousand dollars. In fact, the record justifies us in concluding that J. H. Pettit paid practically nothing on this land except the initial payments. Also the jury found that the Spencers at the time they purchased the above land had notice of whatever rights the heirs of Amanda Pettit had therein, and this finding has evidential support in the record.

As stated above, the six minor children of Amanda Pettit seek a recovery of one-third of the above lands upon the theory of a constructive trust in their favor because they claim J. H. Pettit, their father, used funds and properties, and the proceeds of funds and properties belonging to them, in acquiring such lands, title to which was taken in the individual name of J. H. Pettit. We have already shown that the claim that funds of these six children were used in acquiring these lands is based upon proof that at the time Amanda Pettit died there was on hand certain personal properties, which J. H. Pettit took charge of, and with which he continued his ranching business as before Amanda Pettit's death, selling the same, and with the proceeds acquiring other personal properties and the lands here involved. The record in this respect is, in law, of sufficient legal probative force to show that J. H. Pettit did take the personal properties of the community of himself and Amanda Pettit, deceased, and use the same as his own, in continuing his ranching business in much the same manner that he did before his wife's death; that he sold such properties at various times, and acquired other cattle, sheep, etc.; that he continued to sell and again purchase and again resell in the manner above shown; that he borrowed various large and small sums of money, and also mixed these borrowed funds with his other funds so that all of the funds, that is, the proceeds of the property on hand at Amanda Pettit's death, and the properties thereafter acquired, and the borrowed funds, were so mixed and mingled as to lose their identity; and make it impossible to separate the one from the other.

In order for the six children to recover the one-third interest in the land here involved, it is necessary that they prove that money belonging to them went into the purchase thereof. In addition to the proof of the mixing and mingling of funds and properties above shown, the evidence of J. H. Pettit, who testified for the six children in regard to the funds used in the purchase of the several tracts of land, shows, in substance, that he was unable to tell what funds were used to purchase the land, that is, he was unable to tell whether he purchased the land with money borrowed or with funds on hand, from the sale of cattle and other live stock, or how he got the money. In other words, the lands are shown to have been purchased by the payment of a very small cash payment, and notes for deferred payments, and the funds were procured in the manner above shown.

It is shown that the Spencers bought this land with notice of the rights and title of these six minor children of Amanda Pettit therein. It follows that the rights of the Spencers must be measured by the same standards and rules of law that would govern the suit against J. H. Pettit himself, and had the land never been sold by him.

On the former appeal of this case when it reached the Supreme Court it was referred to Section B of the Commission. The opinion of that section was written by Judge Speer, and was expressly approved by the Supreme Court. In that opinion Judge Speer held:

"It is clear the recovery herein has been had upon the theory that the lands involved were acquired wholly 'by the use and investment of the proceeds of the property, real or personal, owned and held by J. H. Pettit and his deceased wife, A. E. Pettit,' or, in other words, the estate of the father and the children. But it is equally clear that the undisputed evidence does not justify the submission of any such theory, for it cannot be said that the consideration to the extent of the credit evidenced by Pettit's notes (which is stated by plaintiff in error to be 97 per cent. of the purchase price) was the proceeds of property belonging to the first community. There undoubtedly was evidence sufficient to take to the jury the issue of the character and amount of the consideration actually paid in the purchase, but there is no evidence whatever to justify the assumption that all of the consideration was paid. Such assumption is contrary to the undisputed evidence. The fact, however, that the purchases were for the most part on credit would not necessarily disprove the plaintiffs' right to recover, nor establish the father's right to a separate interest in the lands to the extent of the credit thus extended him. The solution depends entirely upon

the intention of the father in the transactions."

■ It is clear from the above quotation from Judge Speer's opinion that he held the evidence sufficient in law to take to the jury the question of a constructive trust in favor of the six minor children so far as the cash consideration is concerned. The evidence on this appeal is not materially different in regard to this matter from the evidence on the former appeal, and therefore all assignments contending that there is no evidence showing that the funds of the six children are traced into the land so far as the cash paid therefor is concerned is decided and foreclosed adversely to the Spencers by the opinion of Judge Speer in the former appeal. Spencer v. Pettit, 2 S.W.(2d) 422.

■ Judge Speer expressly held that the fact that the purchases were made "for the most part on credit would not necessarily disprove the plaintiffs' right to recover, nor establish the father's right to a separate interest in the lands to the extent of the credit thus extended him. The solution depends entirely upon the intention of the father in the transactions." It was because the intent of the father with reference to how the deferred payments were to be made was not submitted to the jury that the case was reversed and remanded. The above holdings of Judge Speer were expressly approved by the Supreme Court. The Spencers are charged with J. H. Pettit's intent because they bought with notice, and stand in his shoes, and are entitled to only such rights as Pettit would have been entitled to had the suit been against him and the land never sold. When the case was tried this time in the district court, that court complied with the holding of the Commission as expressed in Judge Speer's opinion and submitted to the jury the following special issue:

"Was it the intention of J. H. Pettit at the time he acquired the property in controversy, and executed notes in payment thereof, to make payment of such notes out of the common property of himself and children? Answer 'yes' or 'no.'"

The jury answered the above special issue "yes." This answer is supported by competent evidence in the record.

It follows from the holdings in Judge Speer's opinion and the verdict of the jury that the constructive trust of the six children is established by the verdict and supported by the evidence.

■ By their sixth assignment of error the Spencers contend that the Court of Civil Appeals erred in holding that the defendants in error, the six children of Amanda Pettit, deceased, did not have to trace their property into the fund with which the land was purchased. We do not understand the Court of Civil Appeals to so hold; but if they do the holding is immaterial, for the reason that the trial court submitted the following special issue to the jury:

"Was the real estate of 5940.6 acres, described in paragraph three of the plaintiffs' petition, acquired by J. H. Pettit by the use of investment of the proceeds of the property, if any, owned and held by him, and his deceased wife at the time of her death, or from the increase of such property? Answer 'yes' or 'no.'"

The jury answered the above question, "Yes."

It has already been held by the Supreme Court itself that the evidence is legally sufficient to sustain the above answer. It follows that there is a jury finding on sufficient legal evidence that the property of the six children of Amanda Pettit, deceased, have been traced into the lands here involved.

■ If there are any statements made by the Court of Civil Appeals in their opinion in the instant appeal which are contrary to the holdings of the Commission in the former appeal, they are immaterial, for the reason that the trial court in the instant trial properly met the requirements of the Commission opinion, approved by the Supreme Court, in the former appeal.

We have considered all assignments, and in our opinion the Court of Civil Appeals has entered a correct judgment in this case, and we recommend that it be affirmed.

GREENWOOD and PIERSON, JJ.

Judgment of the Court of Civil Appeals affirmed.

CURETON, C. J., not sitting.