**HOWARD v. HOWARD et al.**
**No. 12568.**

Court of Civil Appeals of Texas. Fort Worth.
Dec. 5, 1931.

Rehearing Denied Feb. 6, 1932.

James R. Wiley, of Denton, and H. S. Calaway, of Nocona, for appellant.

Donald & Donald, of Bowie, and T. H. Yarbrough, of Montague, for appellees.

BUCK, J.

In this case, Miss Roxye Howard, Mrs. Carrie Howard La Force and husband, Mrs. Edith Howard Jackson and husband, and Joe W. Howard, sued their father, John G. Howard, for a division of their mother's (Mrs. Vina Howard, deceased since October 16, 1909) interest in the community estate of their father and mother. Plaintiffs alleged that at the time of their mother's death there was considerable real and personal property belonging to the community estate of their father and mother, consisting of money, cattle, horses, mules, hogs, grain, and other foodstuff, and cotton; that, after the death of Mrs. Vina Howard, plaintiffs and their father continued in possession of the community estate, and by their united efforts, together with money received from the sale of certain property, and rents from the land, acquired approximately 1,934 acres of land. That the proceeds from the use of said community estate was invested by John G. Howard in other real property, all of which, by reason of the purchase as aforesaid, became property owned jointly by the defendant John G. Howard and the plaintiffs. That, at the time of the death of Mrs. Howard, the homestead of said family was on a tract of land consisting of approximately 160 acres, which the said John G. Howard inherited from the estate of his mother, Mrs. S. B. Howard, and, after the death of Mrs. Vina Howard, said family continued to reside on said premises and resided thereon at the time of the suit, except the married daughters, who with their husbands lived elsewhere. However, one of the daughters lives on other property which is a portion of said estate. That, all the while subsequent to the death of their mother, plaintiffs have contributed their efforts and endeavors in the upkeep and management of said property, and to increase the value thereof, and said estate gradually increased year by year until about four years

prior to the suit, at which time said estate consisted of approximately 2,470½ acres of land, several hundred head of cattle, money in bank, promissory notes, and vendor's lien notes, bank stock, stock in other corporations, paid-up values in life insurance policies, and various other properties, which plaintiffs alleged was at said time approximately of the value of $100,000.

Plaintiffs further alleged that they were the joint owners with John G. Howard of the 1,934 acres of land purchased subsequent to the death of Mrs. Vina Howard, and that their father became solicitous of the plaintiffs, and induced them, by representing that it was to their advantage for them to do so, to execute some kind of an instrument delegating and authorizing the said John G. Howard to exercise control over said property, and to execute any drilling contract or oil and gas lease thereon that he might deem expedient, stating that at that time a well was being drilled on said property, and that numerous leases would have to be executed, and, by the execution of this power of attorney, expenses could be saved to both him and to the children. That plaintiffs relied solely upon the statements made to them, that such instrument was merely a power of attorney, and did not know until on or about April 1, 1930, that such instrument was other than a power of attorney, when they learned that such instrument was a quitclaim deed with special warranty clause attached. Plantiffs alleged further that they were the joint owners with their father of the fee-simple title of the following land and premises situated in the state of Texas, county of Montague, towit:

165 acres, Block 89, Kaufman County School Land, Abst. 407; 243 acres, Block 92, Kaufman County School Land, Abst. 407; 80 acres, Block 102, Kaufman County School Land, Abst. 407; 243 acres, Block 90, Kaufman County School Land, Abst. 407; 160 acres, Block 91, Kaufman County School Land, Abst. 407; 93 acres, Block 100, Kaufman County School Land, Abst. 407; 162 acres, Block 108, Kaufman County School Land, Abst. 407; 80 acres, Block 85, Kaufman County School Land, Abst. 407; 41 acres, Block 84, Kaufman County School Land, Abst. 407; 119½ acres, Block 97, Kaufman County School Land, Abst. 407; 33 acres, Block 108, Kaufman County School Land, Abst. 407; 131½ acres, Block 84, Kaufman County School Land, Abst. 407; 60⅖ acres, Block 84, Kaufman County School Land, Abst. 407; 93 acres, Block 85, Kaufman County School Land, Abst. 407; 132½ acres, Block 72, Kaufman County School Land, Abst. 407; 187 acres, out of the F. Escobar Sur. Abst. 216; 160 acres, out of the W. I. Mayfield Survey, Abst. 453; 320 acres, out of the W. G. Coffee Survey, Abst. 144.

Plaintiffs represented that they were not in possession of any more accurate description of said real property, but alleged that defendant John G. Howard was in possession of deeds, abstracts, and other title papers, and knew the true and correct description of field notes of said land, and asked that he furnish a correct and accurate description of all the property owned as alleged by him, except the 160-acre tract of land which he inherited from his mother, Mrs. S. B. Howard.

They further alleged that, some four years prior to the suit, their father became addicted to the use of intoxicants and other narcotics, and that he ceased to be the good manager which he had been theretofore, and that he did not contribute anything further to the care and management of their community estate. They alleged further that their father recently, after an association of several years, brought to the homestead a Mrs. Lucy Clary, who he claimed to be his wife, and that he informed the plaintiffs that said Lucy Clary was to have a child's part of all of said estate; that in truth and in fact he was then the owner of the entire properties and had demanded that plaintiffs surrender possession of said properties and had threatened violence unto them if they should resist his demands; that the said Lucy Clary is a woman of designing temperament, and is only tolerating the companionship or presence of said John G. Howard with the view of obtaining an interest in his estate.

Wherefore plaintiffs prayed the court that the defendant be cited as the law directs, and that upon final proof they have said properties hereinabove mentioned and described partitioned, and that, pending final trial, a receiver be appointed to take charge of the property.

The trial court, upon the presentation of this petition, ordered a writ of injunction to be issued to the said John G. Howard, commanding and directing that the said John G. Howard be restrained from selling, giving away, or mortgaging, either directly or indirectly, any of said property, either real or personal.

The defendant filed his first original answer, in which he pleaded a general demurrer, and further alleged that the plaintiffs had in their petition alleged that he was an habitual drunkard, which allegations were prejudicial to the interests of the defendant, and were not necessary allegations for a receivership. He directed his pleadings and exceptions to various other allegations of the petition, not necessary here to mention. He further pleaded that he had married Mrs. Vina Simpson on November 6, 1892. That Mrs. Vina Howard had no separate estate, either personal or real, at the time of her

death, but did own her one-half community interest with the defendant in property acquired during their marriage relation. That his wife left no will, and there was no administration had upon her estate, and that all of the plaintiffs, his children, were of full age and competent to execute deeds of conveyance. He further pleaded that letters of guardianship had been prepared at the time of the minority of Joe W. Howard and Miss Edith Howard, now Mrs. J. P. Jackson, and that orders were made appointing the defendant guardian of said minors, and that he duly qualified as such guardian and caused to be filed in the district court, on or about December 20, 1917, an inventory and appraisement of the community estate of the defendant and his deceased wife; that said guardianship was made necessary in order to execute oil and gas leases upon the community lands for the production of oil and gas. He set out thirteen tracts of land situated in Montague county, which he claimed to be his separate property, he having purchased the same since the death of his wife and having paid for the same out of his own separate funds. It will not be necessary to more particularly describe these thirteen tracts at this time.

He further described three tracts of land, the first containing 160 acres, more or less, and the second containing 160 acres, more or less, and 41 acres of land out of the northeast corner of block 84, Kaufman county school land, conveyed to J. G. Howard by J. R. McMurtry et al., by deed dated October 2, 1885, which he alleged were his separate property. He further described a tract of land, being 160 acres of land situated in Montague county, about 18 miles northeast of the town of Montague, etc., which he alleged to have acquired before his marriage with his deceased wife. He further alleged that there were six tracts of land more fully described in the pleadings, which belonged to the community estate. He pleaded that the defendant in his own right and name was in possession of the following property at the time this suit was filed and writ of injunction was served upon him: 263 head of cattle; 27 head spring calves; 14 head horses and mules; miscellaneous farming tools located on the premises, including implements, four wagons, and one truck; hay and feed to run teams to harvest; 10 shares stock, $100 each, in Nocona Boot Company; 40 shares, $100 each, in Justin Leather Goods Company, Nocona, Tex.; 30 shares, $100 each, in People's National Bank, Nocona, Tex.; 30 shares, $100 each, in Citizens' National Bank, Saint Jo, Tex.; 84 shares in Elco Oil Company, Sanger, Tex., $25 each; $1,500 balance principal on vendor's lien note made by Rosa Pearson; $200 vendor's lien note made by C. C. Cain; 6 vendor's lien notes, one for $250 and five for $200 each, described in a deed from T. P. Skinner to Joe W. Howard, dated September 16, 1924, with interest at 8 per cent.; Joe W. Howard's personal note for $500, dated September 15, 1928, due March 15, 1929, with interest at 10 per cent.; Joe W. Howard's personal note for $300, dated December 29, 1928, due June 29, 1929, with 10 per cent. interest, upon which the defendant was indorser; Joe W. Howard's personal note for $945, dated December 7, 1929, due May 20, 1930, with interest, to the People's National Bank of Nocona, Tex.; that the defendant was indorser on one note for $420, held by the People's National Bank of Nocona, Tex., executed by Joe W. Howard, dated January 4, 1930, due July 1, 1930, with interest; a portion of the household and kitchen goods and utensils in the John G. Howard residence.

That defendant holds life insurance policy on his own life for $2,000, paid up in the Mutual Life Insurance Company of New York; $5,000 twenty year pay, in the Merchants' Life Insurance Company, Des Moines, Iowa; $3,000 twenty year pay, in the Merchants' Life Insurance Company, Des Moines, Iowa; all life insurance policies are payable to the defendant's estate.

That at the time of the death of defendant's wife, the plaintiffs were all minors, Roxye being about 14 years of age, Carrie about 12 years of age, Joe about 8 years of age, and Edith about 4 years of age. He pleaded that he had made advancements to the said children as follows:

That he had purchased 128 acres of land for his daughter Mrs. Carrie La Force, and had delivered Mrs. La Force ten two-year old heifers, of an estimated value of $250; that he had delivered to Mrs. Edith Jackson nine heifers, of an estimated value of $25 each, and the proceeds of one steer valued at $38; a pair of mules bought by J. P. Jackson, husband of Edith, and paid for by defendant, of the value of $100. That Edith Jackson and her husband have resided upon some portion of defendant's land for four or five years, and have had free access to such land for cultivation and pasturage for cattle not exceeding 25 or 30 head. That Joe Howard has resided on some portion of the premises and most of the time in the house with the defendant, and was paid $400 per year for labor for two years, and since that time he has had free use of such farming land as he desired and in addition has been in the hog business using defendant's land, lots, and improvements, together with feed for carrying on such business, and has at no time paid any rents or reimbursed the defendant for feed used off of the lands. That plaintiff Joe W. Howard has been checking on the defendant's account for the last two or three years and during this time has bought hogs and other articles for his own use, of some of which the defendant did not have record,

and he notified the said plaintiff Joe W. Howard to make and file a complete accounting of all checks drawn by him against defendant's account, the proceeds of which Joe W. Howard used for his own benefit in the purchase of hogs or otherwise.

That plaintiff Roxye Howard has remained in the defendant's home since she reached her majority and had free use of the defendant's home, where she has been engaged in the cream and poultry business, using defendant's cows for milking and has fed the cattle and chickens from the defendant's feed stored on the premises, for which there has been no charge made against the said plaintiff Roxye Howard. That said Roxye Howard had a severe case of influenza and required necessary medical treatment, and the charges for which the defendant paid on this account amounted to $250.

Defendant further pleaded that, at the time of his marriage with Vina Simpson Howard, he owned about 30 head of cattle and about 15 head of horses, besides wagons, harness, farming tools, and implements, of a total value of about $1,750, and he owed about $650. That at the time of his wife's death, he owned about 100 head of cattle at a value of about $1,000, and about 14 horses and mules at the value of about $700, and had no indebtedness and no money on hand and farming tools and implements of a value of about $450.

He further pleaded that, at the time the injunction was served upon him, he owed one note for $1,025, due to the People's National Bank of Nocona, Tex., and an additional liability as indorser on notes given primarily by Joe W. Howard. He further pleaded that the plaintiffs have each received and have been paid by the defendant, in personal property and benefits, more than their respective shares in the personal estate of the defendant and his deceased wife. He prayed that the court, by its decree, find and declare the separate lands of the defendant, and the community lands of the defendant and his deceased wife, and that appraisers be appointed and the land partitioned, giving to each party his or her share thereof, and that each party be placed in separate possession and quieted in his or her title to same. This answer was duly verified by John G. Howard.

On November 22, 1930, plaintiffs filed their first supplemental petition. To the filing of this petition the defendant excepted and presents alleged error. The defendant, on the 13th day of November, 1930, filed his first supplemental answer, and later filed his second supplemental answer on November 25, 1930. On November 25, 1930, defendant filed his motion to strike plaintiffs' first supplemental petition from the record. This motion was overruled by the trial court.

The case was tried upon the submission of

certain issues, which issues, together with their answers, are here set out:

"Special Issue No. 1: Did John G. Howard, after his marriage to Vina Howard, pay the notes or any part thereof on the 160 acre tract of land, which he bought before his marriage, out of his separate estate? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 2: If you have answered the preceding issue 'No,' you need not answer this, but if you have answered the same 'yes,' then you will answer the following: How much, if any, did John G. Howard, after his marriage, pay on said notes out of his separate estate. Answer: $200.00.

"Special Issue No. 3: At the time of the death of Vina Howard, did she and John G. Howard have on hand any money belonging to their community estate. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 4: If you have answered the preceding issue 'no,' you need not answer this, but if you have answered the same 'yes,' then you will answer the following: How much cash, if any, belonging to said community estate of Vina Howard and John G. Howard was on hand at said time. Answer: $6,000.00.

"Special Issue No. 5: At that time of the death of Vina Howard did she and John G. Howard have any cattle belonging to their community estate. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 6: If you have answered the preceding issue 'no,' you need not answer this, but if you have answered the same 'yes,' then you will answer the following: What was the reasonable value of said cattle, if any, at said time. Answer: $3,000.00

"Special Issue No. 7: At the time of the death of Vina Howard, did she and John G. Howard have any horses, mules, hogs or household goods or tools or implements belonging to their community estate. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 8: If you have answered the preceding issue 'No,' you need not answer this, but if you have answered the same 'yes,' then you will answer the following: What was the reasonable value at the time of Vina Howard's death of said property, if any, mentioned in the preceding issue, belonging to the community estate of Vina Howard and John G. Howard. Answer: $3,000.00.

"Special Issue No. 9: In the purchase of the lands described in the deed dated the 29th day of May, 1916, to J. G. Howard from Lee Farquhar and wife, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 10: In the purchase of the lands described in the deed from G. S.

Miller and wife to J. G. Howard, dated the 20th of September, 1913, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 11: In the purchase of the lands described in the deed from D. E. Miller and wife to John Howard, dated the 13th of October, 1913, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 12: In the purchase of the lands described in the deed from R. D. Miller and wife to John Howard, dated the 13th of October, 1913, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of any of said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 13: In the purchase of the lands described in the deed from G. S. Miller and wife to J. G. Howard dated the 20th of September, 1913, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of any of said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 14: In the acquisition of the livestock, implements, corporate stock, feed stuff and notes now on hand, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of any of said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 15: In the payments of premiums on any of the life insurance policies now held by John G. Howard, did John G. Howard use any part of the money or personal property belonging to the community estate of Vina Howard or the proceeds of any of the said personal property. Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. 16: What was the value of the property turned over to Carrie LaForce by John G. Howard. Answer: $1,350.00.

"Special Issue No. 17: Was it the intention of John G. Howard at the time that said property was turned over to Carrie LaForce that same should be deducted from her interest in the estate of her mother, Vina Howard. Answer 'yes' or 'no.' Answer: No.

"Special Issue No. 18: What was the amount of money paid as hospital bill for Roxye Howard. Answer: $250.00.

"Special Issue No. 19: Was it the intention of John G. Howard, at the time said bill was paid, that same should be deducted from her interest in the estate of her mother. Answer 'yes' or 'no.' Answer: No.

"Special Issue No. 20: What was the value of the property and money turned over to Edith Jackson by John G. Howard. Answer: $100.00.

"Special Issue No. 21: Was it the intention of John G. Howard, at the time that said property was turned over to Edith Jackson, that same should be deducted from her interest in the estate of her mother, Vina Howard. Answer 'yes' or 'no.' Answer: No.

"Special Issue No. 22: What was the value of the property turned over to Joe W. Howard by John G. Howard. Answer: $300.00.

"Special Issue No. 23: Was it the intention of John G. Howard, at the time that said property was turned over to Joe W. Howard, that same should be deducted from his interest in the estate of his mother, Vina Howard. Answer 'yes' or 'no.' Answer: No."

The plaintiff requested the submission of special issue "A": "What amount of money, if any, in which the plaintiffs and the defendant in this cause were interested, was used by the said John G. Howard in the purchase of oil stocks, if any, or in connection with drilling a well or wells, if any, in an endeavor to produce oil and gas, or in connection therewith, if any. Answer in dollars and cents. Answer: $12,000.00."

The plaintiff also requested the submission of special issue "B," which was given: "What amount of money, if any, did John G. Howard use in the purchase of material and supplies used in the construction of addition to buildings, barns, sheds, if any, that were placed upon the separate lands which the said John G. Howard inherited through his deceased father, J. C. Howard, and deceased mother, Susan B. Howard, that was either community funds of the said John G. Howard and his deceased wife, Vina Howard, before her death, or belonging to the community estate of the said Vina Howard after her death, if any. Answer in dollars and cents as you find the facts to be. Answer: $2,000.00."

The trial court overruled defendant's motion for judgment, and entered judgment awarding a partition of nineteen tracts of land, all situated in Montague county. He awarded these tracts to be partitioned between the defendant and the plaintiffs, and that there also be partitioned 263 head of cattle; 27 head of spring calves; 14 head of horses and mules; all chickens; miscellaneous farming tools, located on the premises including implements, 4 wagons; all hay and feed; 10 shares of stock, $100 each, Nocona Boot Company, Nocona, Tex.; 40 shares, $100 each, of Justin Leather Goods Company, Nocona, Tex.; 30 shares, $100

each, People's National Bank; 30 shares, $100 each, Citizens' National Bank, St. Jo, Tex.; 84 shares, Elco Oil Co., $25 each, of Sanger, Tex.; balance of approximately $1,-500 on vendor's lien note executed by Mrs. Rosa Pearson; balance of approximately $200 on vendor's lien note executed by C. C. Cain; balance due on six vendor's lien notes, one for $250 and 5 for $200, described in deed from T. P. Skinner to Joe W. Howard, dated September 16, 1924, after credit of $800 is made thereon; a promissory note for $500, dated September 15, 1928, executed by Joe W. Howard; a promissory note for $300, dated December 29, 1928, executed by Joe W. Howard; all kitchen and household furniture, and other appurtenances in the residence located on John G. Howard lands; the cash surrender value of the insurance policies, being $2,000 paid up in the Mutual Life Insurance Company, N. Y., $5,000 twenty year pay in the Merchants' Life Insurance Company, Des Moines, $3,000 twenty year pay in the Merchants' Life Insurance Company, Des Moines; all cash in People's National Bank, Nocona, Tex., Citizens' National Bank, St. Jo, Tex., or in any other bank located; 5 shares of stock, $100 each, in the Montague County Abstract Company; and $600 of the consideration paid for the 160 acres of land which was the land which had been purchased by John G. Howard before his marriage, but was paid for later. The court found that a trust estate was created upon the death of Vina Simpson Howard, in favor of plaintiffs upon the community property owned and held by John G. Howard and his deceased wife at the time of her death. The court awarded to John G. Howard, as his separate property, 4 tracts of land, towit:

"First Tract: Sub-division of Lot No. 85, of the original survey of the Kaufman County School Lands, and bounded as follows: Beginning at the N. W. Corner of Lot No. 84, a rock for corner from which a p. o. brs. s. 88 W. 2½ vrs. dist. another p. o. brs. N. 4½ E. 20 vrs. dist.; thence N. 961¾ vrs. to the S. W. corner of Lot No. 86; thence E. 1018 vrs. to the East Boundary Line of the original survey made for Kaufman County School Lands, a stake for corner; thence in a southerly direction with said East Boundary line 961¾ vrs. to the N. E. Corner of lot No. 84; thence W. 1018 vrs. to the place of beginning, containing 160 acres, more or less, conveyed to J. C. Howard by deed dated the 13th day of December, 1887, by J. E. Dillard, County Judge and Agent for Kaufman County, Texas, recorded in Vol. 4, page 391, Deed Records of Montague County, Texas, less 93 acres, more or less, conveyed by J. C. Howard et ux., to J. W. Porter, by deed dated November 12, 1877, recorded in Vol. 7, page 571, deed records of Montague County, Texas.

"Second Tract: 160 acres, more or less, it being the North half of a 320 acre tract of land patented to G. W. Coffee situated in Montague County, Texas, near the mouth of Farmers Creek about 18½ miles N. 23 E. from the town of Montague, said 160 acres conveyed is bounded as follows: Beginning at the N. W. corner of said Coffee Survey; thence S. 950 vrs. with the West line of said survey to corner; thence E. 950 vrs. to corner on the East Line of said survey; thence north to the N. E. corner of said survey; thence West to the place of beginning. Conveyed to J. C. Howard by deed dated the 13th day of February, 1884, by A. Echols, recorded in Vol. 'S,' page 349, Deed Records of Montague County, Texas.

"Third Tract: 41 acres of land out of the N. E. corner of Block No. 84, Kaufman County School Land, conveyed to J. C. Howard by J. R. McMurtry et al., by deed dated October 2nd, 1885, recorded in Vol. 'Y,' page 141, Deed Records of Montague County, Texas. (This tract is not described by metes and bounds.)

"Fourth Tract: All that certain tract or parcel of land, towit: 160 acres of land situated in Montague County, Texas, on Cottonwood Creek, near its mouth, about 18 miles N. E. of the town of Montague, and is the South half of a 320 acre survey in the name of G. W. Coffee, patent No. 405, Vol. 14, date of Patent, 30th of July, 1873. Said 160 acres hereby conveyed is bounded as follows: Beginning at the S. W. corner of said Coffee 320 acre survey which is one corner of the Kaufman County School Land; thence N. 950 vrs. corner on the line of the said Kaufman County School Lands; thence E. 950 vrs. the East Line of the said Coffee survey; thence S. 950 vrs. the S. E. corner of said Coffee Survey; thence W. 950 vrs. with the Line of said Kaufman County School Land to the place of beginning. Conveyed to J. G. Howard by deed dated the 2nd day of November, 1891, by J. T. Dunford et ux., recorded in Vol. 17, pages 400-1-2-2-, Deed Records of Montague County, Texas."

The court further found that said estate is legally chargeable with the debts as set forth in defendant's answer, aggregating $3,384.24, and the interest of John G. Howard is subject to the payment of one-half thereof, and the interests of Roxye Howard, Carrie LaForce, Edith Jackson, and Joe W. Howard is subject to the payment of the other one-half thereof; that plaintiffs and John G. Howard are the sole owners of the property not adjudged as belonging to the separate estate of John G. Howard, consisting of lands and personal property, and that said lands and personal property are subject to partition. The court appointed M. F. Leonard, county surveyor, J. D. Jameson, and Gould Whaley to partition the lands, and to

divide and partition the lands and personal property.

From this judgment the defendant has appealed.

## Opinion.

The first proposition is directed to the failure of the trial court to strike plaintiffs' first supplemental petition from the record. He urges that both plaintiffs and defendant had announced ready for trial and a jury had been selected and impaneled, and that the supplemental petition came too late. He cites Krueger v. Klinger, 10 Tex. Civ. App. 576, 30 S. W. 1087, and Contreras v. Haynes, 61 Tex. 103. Article 2001, subd. 2, Rev. Civ. Statutes, reads as follows: "Parties may amend their pleadings [etc.] * * * 2. When court is in session under leave of the court upon such terms as the court may prescribe before the parties announce ready for trial, and at such time as not to operate as a surprise to the opposite party."

Defendant did not allege or plead that the delayed filing of the supplemental petition operated as a surprise to him, nor did he ask for a continuance. Granting leave to file supplemental petitions or trial amendments is largely in the discretion of the trial court, and, where the facts do not show that the exercise of such discretion was detrimental to the other party, the appellate court will not disturb the ruling. A trial amendment will be allowed to supply a jurisdictional fact. McDannell v. Cherry, 64 Tex. 177. Pleadings may be amended in a suit by attachment for the purpose of correcting and making certain the original allegations as to the means by which plaintiffs acquired the claim sued on. Sweetzer v. Claflin, 82 Tex. 513, 17 S. W. 769; Boren v. Billington, 82 Tex. 137, 18 S. W. 101. Moreover, we think the amendment merely amplified the plea made in the original petition that the defendant became the trustee of the community estate and the heirs cestui que trust. Defendant filed his second supplemental answer in answer thereto. The assignment is overruled.

The fourth proposition presented alleged error in admission of certain testimony of Roxye Howard. She was asked: "From your knowledge and observation and knowing the stuff you have on hand and what it has heretofore taken to supply the needs of approximately the same number of cattle, tell the jury whether or not there is feed and forage enough to keep the cattle through the winter?" To which counsel for defendant objected, because in a suit for partition it would not be possible for a jury to arrive at a decision as to what might be necessary to take the cattle through the winter when the ages, class of cattle, had not been shown, or what period of time they would be on feed, or whether roughed. through or upon full feed.

The court overruled said objection. The evidence showed that Miss Roxye Howard at the time she testified was over 30 years of age and had lived on the place ever since she was a baby, and had worked with the cattle and fed them for many years. We think she showed herself qualified to state what it would cost approximately to feed the cattle and stock on the place during a winter.

Bill of exception No. 6 presents the following alleged error: "Be it remembered that on the trial of the above styled and numbered cause in this court, the plaintiff Roxye Howard, on redirect examination, upon being handed a bank statement and questioned as to figures shown upon the statement, was asked whether she knew of 'anything that happened out there on the place whereby it required the issuance of any such checks as that'?" To which counsel for defendant objected for the reason that the bank statement is a mere compilation of figures made up with a posting machine from checks as original instruments, and, the bank statement being in the possession of the plaintiff who was testifying, she is presumed to be in possession of the checks which are the best evidence. The witness answered: "I have seen this statement you hand me before. With regard to the items on August 9th of $10.00 and one for $1,420.00, there was no expenditures on the place that would require any such sum of money in maintaining it. There were no checks with this statement when I found it and it has been in my father's possession. There was nothing necessary to be done at that place that would require any such expenditures of money during the month of August, 1928, or July. These deposits on August 9th of $1,900.00 and August 16th of $1,000.00 came from selling cattle, or the land out there, proceeds out there on the farm."

It seems the witness was being interrogated about some expenditures which the father was alleged to have made in oil speculations. This amount was found by the jury to be $12,000, and the court in its judgment did not charge any of said expenditures against the defendant. Therefore, any error in admitting this testimony becomes immaterial.

Objection was also made to the action of the trial court in overruling defendant's motion for judgment. We think that the answers of the jury to the special issues submitted to them support the judgment rendered. The evidence showed that the appellant had only paid one-fifth of the purchase price of the 160-acre tract which was bought by him just a short time before his marriage; that such land was used by him and his wife, and from the revenues therefrom, together with other community earn-

ings from all other endeavors, appellant purchased other tracts of land which therefore became community property. In the judgment, the court made subject to partition only four-fifths of this tract of land. It is pleaded by the defendant that he purchased 160 acres, being the south one-half of the G. W. Coffee survey. November 2, 1891, for a recited consideration of $1,000, $200 of which was paid in cash and four vendor's lien notes for $200 each was given by the purchaser, and the jury so found. Defendant claimed this land as his separate estate. The court did not allow this claim, and held that four-fifths of the original purchase price was paid by John G. Howard after his marriage. The jury found that only $200 was paid in cash before the marriage, and that the balance of the purchase price was paid out of the community estate. Therefore, we think it was proper to charge four-fifths of the value to the community estate. The defendant below did not offer any proof to trace his separate funds into any of said property, as was his duty so to do, the burden being upon him, due to the nature of his relationship. Therefore the presumption would obtain that all property accumulated would become community property between appellant and his children. See Spencer v. Pettit, 2 S.W.(2d) 422, by the Commission of Appeals, approved by the Supreme Court, and cases therein cited. In Andrews v. Brown, 10 S.W.(2d) 707, by the Commission of Appeals, approved by the Supreme Court, it is said, quoting from the headnotes: "Where trustee mingles trust funds with his own, the whole will be treated as trust property, except in so far as the trustee may be able to distinguish his own property."

In this case appellant has not sought to distinguish any of his separate funds or property going into the purchase of the lands he afterwards bought. We think the evidence is ample to support the conclusion that the community funds were used to purchase such property acquired after the death of Mrs. Howard.

The following agreement was made by counsel for both sides: "It is agreed between counsel for plaintiffs and defendant that all lands set out in defendant's answer, 13 tracts acquired subsequent to the death of his wife, Vina Simpson Howard, was acquired from the proceeds of the ranch and farm business conducted upon the lands and derived from the lands owned by John G. Howard before his marriage, those acquired by descent through his father's and mother's estate, community lands set out in defendant's answer, and those acquired by him since."

Under the agreement had, together with the evidence introduced, it is conclusively shown that all lands and property acquired subsequent to the death of Mrs. Howard belonged to the community estate.

In plaintiffs' supplemental petition they allege that the husband and the children continued to live on said premises, permitting said property to retain its former status, and thereby said defendant became trustee of said property for the benefit of the children's interest, and the defendant acknowledged at various and sundry times that he was handling said property in connection with these plaintiffs as trustee and often apprised them that the fruits and revenues derived from said property was being reinvested and used for the benefit of their joint estates. If the evidence sustains the assumption by the defendant of the trusteeship of his wife's separate estate, which we believe it does, then all of the community estate would be subject to partition, one-half to John G. Howard and one-eighth thereof to each of the four children. We think this was the basis of the judgment rendered, and approve the same.

All assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

The first ground for a rehearing is that: "Because the court erred in approving the finding of the trial court that a trust estate was created upon the death of the wife of the defendant, the appellant here, and that all property acquired by the defendant subsequent to the death of his wife is the joint property of the defendant and the plaintiffs, the defendant owning one-half and the plaintiffs the other one-half."

In 31 Corpus Juris, p. 1145, under subdivision Husband and Wife, it is said: "In the purchase of property with separate funds, which includes exchange of property, the separate consideration must be traced into the property newly acquired; otherwise the presumption in favor of the community will prevail, and the property will fall into the community." See Epperson v. Jones, 65 Tex. 425; Stoker v. Bailey, 62 Tex. 299; Glasscock v. Hamilton, 62 Tex. 143, and other authorities to the same effect. Under these authorities, it is settled that, unless separate funds are shown to have been used in the acquirement and purchase of property by a husband or surviving husband, the presumption will attach in favor of the existence of such property as a part of the community estate. There is a written agreement appearing in the record which sets up that all the property acquired was the result of the use of the revenues derived from the ranch and farm business conducted upon the lands in existence at the time of the marriage of John G. Howard and his first wife, and that after acquired. The agreement is given in our original opinion. Therefore a trust estate existed from the time of the death of Vina Simpson Howard until the suit in question was instituted, and that trust estate

was owned by John G. Howard as to an undivided one-half interest therein, and by the appellees, share and share alike, as to the other one-half undivided interest. This case, in view of the allegations of trust estate, both by implication as well as by express agreement, take the case out of the rule laid down in Akin v. Jefferson, 65 Tex. 137; Pressley's Heirs v. Robinson, 57 Tex. 453, and Berkley v. Neely (Tex. Civ. App.) 6 S.W.(2d) 430, and places the case upon an equal footing with Spencer v. Pettit, 2 S.W.(2d) 422, by the Commission of Appeals, approved by the Supreme Court. In Andrews v. Brown, 10 S.W. (2d) 707, by the Commission of Appeals, approved by the Supreme Court, it is said: "Where trustee mingles trust funds with his own, the whole will be treated as trust property, except in so far as the trustee may be able to distinguish his own property."

We conclude, upon a careful consideration of appellant's motion for rehearing, that the decision of this court upon original hearing cannot be disturbed, and the motion for rehearing is overruled.