A. H. TARVER et al., Petitioners,

v.

Arline S. TARVER, Respondent.

No. A–10224.

Supreme Court of Texas.

Oct. 6, 1965.

Rehearing Denied Nov. 10, 1965.

Smead & Harbour, Longview, for A. H. Tarver.

L. F. Burke, Longview, R. Dean Moorhead, Austin, for Jack H. Tarver and others.

Kenley, Ritter & Boyland, Jack N. Price, with above firm, Longview, Graves, Dougherty, Gee & Hearon, Austin, for respondent.

CALVERT, Chief Justice.

Arline S. Tarver sued her former husband, A. H. Tarver, for partition of their community estate acquired during nearly forty years of marriage and for an accounting from the date of their divorce on May 19, 1960. The fair market value of all property in the possession of A. H. Tarver and Arline Tarver on that date was $340,545.58. Two children of a former marriage of A. H. Tarver and two children of a deceased son of that marriage, the only heirs at law of the first wife who died intestate, intervened in the case. The intervenors sought, primarily, to recover one-half of the property in the possession of A. H. and Arline Tarver on the theory that the one-half was held by Tarver as trustee for them as heirs of his first wife.

The case was tried to a jury. In response to the only special issue submitted, the jury found that 70% of the property was community of the second marriage. All parties filed motions for judgment notwithstanding the verdict. The trial judge set aside the jury verdict as having no support in the evidence and rendered judgment as follows: (1) Two and one-fourth acres of land in Hardin County, Texas, acquired by A. H. Tarver before his first marriage and having a value of $1,200.00, was found to be his separate property and title thereto was awarded to him. (2) Certain oil royalty and other real and personal property, acquired during the first marriage and having a value of $19,850.00, was found to be community property of that marriage and was awarded one-half to A. H. Tarver and one-half to intervenors.[1] (3) Certain oil royalty, stocks and bonds, real and personal property and cash, acquired during the second marriage and having a value of $308,212.-99,[2] was found to be community property of that marriage and was awarded one-half to Arline Tarver, one-fourth to A. H. Tarver and one-fourth to intervenors. (4) Adjustments were ordered to be made in cash for properties not susceptible to partition in kind. (5) A. H. Tarver was ordered to pay to Arline Tarver $20,579.04 found by the court to be one-half of the net income from their community properties from the date of their divorce on May 19, 1960, to the date of the judgment on May 31, 1963, less certain payments theretofore made. (6) Arline Tarver was ordered to account to intervenors for one-half of the value of a diamond ring found by the court to be community property of the first marriage but to have been a gift from A. H. Tarver to Arline. (7) All obligations of the judgment were directed to bear interest at the rate of 6% from the date of the judgment until discharged. (8) All costs were assessed one-half to Arline Tarver, one-fourth to A. H. Tarver and one-fourth to intervenors. Findings of fact in support of the judgment are set out in the opinion of the Court of Civil Appeals and need not be repeated here.

A. H. Tarver and intervenors perfected a general appeal from the trial court's judgment. Arline Tarver appealed from the judgment only in so far as it (1) taxed one-half of the costs against her, (2) required

---

1. The judgment made no specific award of diamond rings and jewelry shown by an official audit to be community of the first marriage and having a value of $8,625.00, but no complaint is made of this omission.

2. There is a slight variance between the value of the property on hand and the total value of the properties awarded, but the variance is of no consequence.

her to account for one-half of the value of the diamond ring, and (3) denied her a recovery of interest on her one-half of the income from the community of the second marriage after the date of the divorce and before judgment. The Court of Civil Appeals affirmed the trial court's judgment. 378 S.W.2d 381. We affirm.

■ Arline Tarver did not file an application for writ of error. She seeks by cross-assignments in her answer to the applications of A. H. Tarver and intervenors to challenge those parts of the trial court's judgment from which she appealed to the Court of Civil Appeals. Inasmuch as the Court of Civil Appeals denied her the relief she sought, she has lost her right to complain of these matters in this Court because of her failure to apply for writ of error. Sears, Roebuck & Company v. Robinson, 154 Tex. 336, 280 S.W.2d 238 (1955).

■ While A. H. Tarver and intervenors have prosecuted separate appeals, there is no antagonism between them and neither seeks relief from those parts of the trial court's judgment in favor of the other. They join in a common effort to overturn the judgments of the courts below only in so far as they favor Arline Tarver. They complain primarily of the trial court's conclusion, approved by the Court of Civil Appeals, that all property acquired during the marriage of A. H. and Arline Tarver was community property of that marriage and of the finding of fact on which the conclusion is based. The finding of fact is as follows: "Intervenors failed to trace any fund, income or assets of the first community estate into any of the property acquired during the second marriage and held as of May 19, 1960." They assert that the law does not impose on them a burden of tracing the first community funds, income or assets into the property on hand on May 19, 1960, in order to establish their one-half interest therein; that they made all proof required by law to entitle them to recover one-half of the properties; and that they should have been

awarded one-half of such properties and the other one-half should have been divided equally between A. H. Tarver and Arline Tarver. The paramount question in this case, therefore, is whether intervenors had the burden of tracing. If the burden was on intervenors to trace funds, income or assets of the first community estate into the properties on hand which were acquired during the second marriage, and if they failed to discharge the burden, the judgments of the courts below should be affirmed. We hold that they did have the burden of tracing and that they failed to discharge it. The problem and our holding will be better understood if put in proper factual context.

A. H. Tarver and Minnie Ora Peeler were married in 1903. Minnie died November 30, 1918, intestate, leaving three children surviving her: Edward A. Tarver, thirteen years of age, Kathleen Tarver, now Mrs. Kathleen Pfannkuche, ten years of age, and Jack H. Tarver, two years of age. Edward A. Tarver died in 1953, leaving two children, Kathleen Tarver and Edward A. Tarver, Jr., surviving him. The community estate of A. H. and Minnie Tarver at the time of her death consisted of cash, accounts and notes receivable, stocks and bonds, interests in partnerships and joint ventures, oil royalty and real and personal property valued at $348,785.62. The estate had a net worth of $335,942.84. No administration was had on the estate of Minnie Tarver and no guardian of the estates of the children was appointed. A. H. Tarver simply continued to control and deal with the property as though it were his own, recognizing, however, that one-half belonged to his children.

A. H. Tarver and Arline Self were married July 18, 1921. The marriage was terminated by divorce on May 19, 1960. At the time of the marriage, the community property of the first marriage still in the possession of A. H. Tarver had a fair market value of $282,650.41, and the community estate a net worth of $276,670.41. There was a continuing diminution in the value

of assets in the possession or control of Tarver until 1931, at which time all properties on hand had a value of $134,174.49 and the combined estates a net worth of $48,688.70. From 1931 to 1960 there was a gradual increase in both book value of assets on hand and net worth of the combined estates. On the date of the divorce, the assets of the combined estates had a book value of $236,473.87 and, on that basis, the estates had a net worth of $205,887.87. When converted to fair market value, the assets of the combined estates had a value of $340,454.58 and the estates a net worth of $309,959.58. Arline Tarver was awarded a one-half interest in all property on hand on the date of the divorce except that which was identified as having been acquired before her marriage.

Tarver never made an accounting to or settlement with the children of his first wife and none was demanded by them until they intervened in this suit. The youngest of the children reached his majority in 1938. All of the children consented to and acquiesced in their father's use of their interests in the properties of the first community for more than twenty-five years after reaching their majority and they knew that assets of the first community would be, and actually were, sold, depleted, depreciated and disposed of during the second marriage and that the proceeds were mixed and mingled with income of Tarver from all sources. Arline Tarver knew as early as 1924 that Tarver had not settled with the children of the first marriage, but she had no control over or active voice in the management of the business affairs of her marriage. From and after 1922, Tarver maintained one bank account in Shreveport, Louisiana, through which was channeled all income from all sources and from which virtually all disbursements for expenses and purchases were made over a period of some thirty-eight years. As long as they remained a part of the family group, the three children of the first marriage and two children of the second marriage were supported and educated, four to college degrees, with funds from the common bank account.

An evaluation of the legal rights of the parties must begin with that part of Article 4619, Sec. 1, Vernon's Texas Civil Statutes, which provides: " * * * all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. * * *" The plain wording of the statute creates a rebuttable presumption that all property possessed by a husband and wife when their marriage is dissolved is their community property and imposes the burden upon one asserting otherwise to prove the contrary by satisfactory evidence. Wilson v. Wilson, 145 Tex. 607, 201 S.W. 2d 226, 227 (1947); Chapman v. Allen, 15 Tex. 278, 283 (1855).

The general rule is that to discharge the burden imposed by the statute, a spouse, or one claiming through a spouse, must trace and clearly identify property claimed as separate property, Schmeltz v. Garey, 49 Tex. 49, 61 (1878); Chapman v. Allen, 15 Tex. 278, 283 (1855); Lindemood v. Evans, Tex.Civ.App., 166 S.W.2d 774 (1942), writ refused; and that when the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption that the entire mass is community controls its disposition. Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900, 907 (1955); Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494 (1932), writ refused. This general rule has been given controlling effect in at least two cases in which parties claiming through a deceased spouse of a first marriage sought to establish an interest in property acquired and commingled with theirs by the surviving spouse during a second marriage. See Cook v. Cook, Tex. Civ.App., 331 S.W.2d 77 (1960), no writ history; Mason v. Crump, Tex.Civ.App., 254 S.W.2d 831 (1953), writ refused, no reversible error. But it does not appear

that the question presented here was raised and decided in either of the last cited cases.

Petitioners insist that the general rule referred to is not applicable in cases of this kind; that the rights of the parties are controlled by the law of trusts. They correctly assert that when Minnie Tarver died the children of the first marriage and their father became the owners of the community property of the marriage in cotenancy; and they contend that when A. H. Tarver sold the common properties he became, in law, a constructive trustee of the proceeds and of any property acquired therewith to the extent of his children's proportionate interest in the properties sold. They do not question the soundness of the proposition that ordinarily children in this situation have the burden of tracing the proceeds of their property into the particular property upon which they seek to impose the trust. See Bogert, Trusts and Trustees, 2nd Ed., § 921. To relieve intervenors of this burden, petitioners call our attention to the general rule that a trustee who wrongfully commingles trust funds and assets with his private funds and assets has the burden of tracing his private funds and assets and of separating them from the commingled mass, and that if he is unable or fails to do so the entire mass will be regarded as trust property. See Eaton v. Husted, 141 Tex. 349, 172 S.W.2d 493 (1943); Andrews v. Brown, Tex.Com. App., 10 S.W.2d 707, 709 (1928); Howard v. Howard, Tex.Civ.App., 48 S.W.2d 489 (1931), writ refused. They do not, however, rely on this general rule to establish the right of intervenors to a one-half interest in the property in the possession of A. H. and Arline Tarver at the time of their divorce, evidently because the rule runs head-on into the presumption created by Article 4619. Instead, they argue that they discharged their burden of tracing and established intervenors right, as a matter of law, to one-half of all property on hand at the time of the divorce, not clearly identified as belonging to the second community,

when they proved (1) the amount, character and value of the first community estate at the time of their mother's death; (2) that Tarver used the entire estate in his business, selling the property and investing the proceeds as his own and mixing and mingling their interest with his; (3) that he acquired no property from any other source and had no other income; and (4) the amount, character and value of the property on hand at the time of the divorce. They cite Spencer v. Pettit, Tex.Civ.App., 17 S.W.2d 1102, 1106 (1929), affirmed, Spencer v. Pettit, Tex.Com.App., 34 S.W.2d 798 (1931),[3] somewhat analogous on the facts, as expressly announcing the rule for which they contend. As further support for their position, they cite Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935) and Boettcher v. Means, Tex.Civ. App., 201 S.W.2d 255 (1947), no writ history.

Careful analysis of the four opinions in Spencer v. Pettit reflects that the case is not authority for the conclusion petitioners have drawn from it. In that case children of a first marriage who inherited a one-half interest in community property of the marriage when their mother died, sought to impose a constructive trust upon property sold by their father to third persons who had notice of the children's claim. There, as here, the father remarried soon after the first wife's death; and there, as here, the father continued to manage the property of the first community as though it were his own, using and investing and re-investing the income and proceeds from sales, recognizing, however, his children's interest in properties on hand. Also there, as here, the property upon which the court was asked to impose the trust was acquired by the father during his second marriage. On the first appeal, the Commission of Appeals commented that when the father disposed of properties belonging to the first community estate, the children had a choice of remedies in proceeding against the father for the value of the properties

3. On former appeal, see 268 S.W. 779; 2 S.W.2d 422.

disposed of, with interest, or "for the recovery of other properties *into which they could trace their own property or its proceeds*." [4] The Court continued (2 S.W.2d 424):

"In either case the burden would be upon the children to allege and prove the facts entitling them to recover, *which in the latter case would impose upon them the duty of tracing their funds or property into the acquisition of the specific property sought to be recovered*."

The Court noted that the property in controversy was acquired while the father was married to his second wife, and said (2 S.W.2d 425):

"Her property rights as a member of the second community could extend only to acquisitions by herself or her husband during that marriage. If for reasons of law or equity the husband's purchases were in trust for his children by the former marriage, then he never acquired any separate property interest whatever, for which reason, of course, the wife as a member of the community never acquired any. The rights of the children and the duty and liability of the father in such a transaction would be precisely the same whether he had remarried or not."

The case was remanded to the trial court for retrial. On the second trial a jury found, as one had done on the first trial, that the property in controversy had been acquired by the father by the use and investment of proceeds of property of the first marriage or the increase of such property. It was on appeal from the judgment in the second trial that the Court of Civil Appeals defined, as above set forth, the proof required of the children to discharge their burden of tracing. 17 S.W.2d 1106. This Court granted writ of error and the Commission of Appeals wrote in the case once again. 34 S.W.2d 798. Particular

notice was taken of a complaint that the Court of Civil Appeals had held that the children "did not have to trace their property into the fund with which the land was purchased." The Commission commented that it did not understand that the Court of Civil Appeals had so held, but stated that if it had done so the holding was immaterial inasmuch as the evidence adduced was legally sufficient to support the jury's finding.

From the foregoing analysis of three of the four opinions in Spencer v. Pettit, it is obvious that it was not held that the children of the first marriage established their right to an interest in the property in controversy as a matter of law. Moreover, the statements in the first opinion of the Commission of Appeals respecting the rights of the second wife in property acquired during the second marriage were expressly related to a situation in which the husband's purchases "were *in trust* for his children by the former marriage," and presupposed discharge by the children of the first marriage of their burden of tracing. The most that can be said for Spencer v. Pettit is that it recognizes that the burden of tracing imposed on children of a first marriage in cases of this type may be discharged by circumstantial evidence when it is legally sufficient and is strong enough to convince the trial judge or a jury of the existence of the ultimate fact to be proved. See Bogert, Trusts and Trustees, 2nd Ed., § 923, p. 324.

In this case intervenors did not discharge their burden of tracing to the satisfaction of the trial judge by either direct or circumstantial evidence. The finding of the trial judge was that intervenors had failed to trace any fund, assets or income of the first community estate into the properties acquired during the second marriage and on hand at the time the marriage was dissolved. He could have made no other finding on the record before us. This brings us to a consideration of the Magrill and

---

4. Emphasis ours throughout unless otherwise indicated.

Free leasehold interests, the most valuable and highest income producing property on hand at the time of the divorce and, as well, throughout the last twenty-eight years of the second marriage. Petitioners contend that they discharged their burden of proving that these interests were a part of the first community estate although acquired during the second marriage.

Both leasehold interests were acquired by Tarver in substantially the same manner in 1931. For many years he had been engaged in business as a drilling contractor and an oil producer. During his first marriage he acquired drilling rigs and all necessary equipment for drilling for and producing oil. His custom was to take an interest in a lease in return for drilling a well and then to sell a part of his interest for enough money to pay all of his out of pocket costs and provide him with a profit. He acquired the Magrill and Free leasehold interests in this manner. In each instance he negotiated an agreement with the owner of the lease under the terms of which he drilled one well thereon in consideration for the conveyance to him of a one-half interest in the leasehold estate. In each instance he sold a fractional interest in his one-half interest for enough cash to pay all of his drilling expense and provide some surplus. In neither instance did he expend first community funds in the drilling operation. The fractional interests he sold in 1931 were repurchased in 1959. There were two producing wells on the Magrill lease and four producing wells on the Free lease at the time of the divorce.

■ Petitioners' contention that the Magrill and Free leasehold interests are a part of the first community estate is based entirely on the fact that the rigs and equipment used in drilling the first wells on the leases were owned by that estate. The contention is foreclosed against petitioners by our decision in Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 676 (1953). In that case a husband claimed as separate property certain leasehold interests acquired during marriage under "farmout agreements."

The leasehold interests were conveyed to a partnership of which the husband was a member in consideration of the drilling of gas wells. The funds of the partnership used to finance the drilling of the wells were separate property of the husband. We recognized that the husband's separate estate was entitled to reimbursement of separate funds so expended, but held that the leasehold interests were community property of the husband and wife inasmuch as the contractual right to obtain the interests as well as the interests themselves were acquired during the marriage by the talent, skill and toil of one of the marriage partners. In the instant case, the testimony of Tarver clearly establishes that the contractual rights to the leasehold interests as well as the interests themselves were acquired by him because of his peculiar talent, skill and toil. Under the rule of Norris v. Vaughan, the first community may have been entitled, under proper circumstances, to recover the rental value of the drilling rigs and equipment, but it did not become the owner of the Magrill and Free leasehold interests. These interests are a part of the second community estate as a matter of law.

In support of their contentions petitioners quote a statement from Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, 627, as follows: "The community rights of a spouse growing out of a marriage can only affect the individual interest of the other spouse growing out of a preceding marriage. The rights of children by the preceding marriage cannot be affected by the rights of either party arising out of the second marriage." That statement is much too broad, as our holding in this case indicates, and should be related to the question which the Court was deciding. The Court of Civil Appeals' description of the trial court's judgment in Boettcher v. Means, Tex. Civ.App., 201 S.W.2d 255, and its holding with respect thereto are so lacking in clarity as to be useless as a precedent.

For purposes of this opinion we have assumed that A. H. Tarver acted wrong-

fully in his management and disposition of the income and properties of the first community estate and that the rights of the parties are therefore governed by the rules relating to constructive trusts rather than those relating to resulting trusts.

There are other points of error in the applications. They present no error requiring reversal of the judgment of the Court of Civil Appeals. Accordingly, the judgment of the Court of Civil Appeals is affirmed.